## WRIGHT VS. DAY and another.

*Navigable Rivers — Meander Lines — Construction of Deed.*

1. One who purchases from the government land bordered by a navigable river, takes not merely to the meandered line of such river as indicated by the government survey, but to the *margin* or *water's edge*, and becomes the unqualified owner of all land lying *above ordinary high-water mark.*

2. One who had acquired by patent from the government land bordered by Fox river, conveyed a part thereof described in the deed as follows: *   *   " Thence due south, parallel with the west line of Division street   *   *   *to Fox river*; thence northwesterly and *along the meander line of said river,*" etc. *Held,* that the deed must be construed as conveying all the land as far as the *water's edge,* and not merely to the meandered line of the river as indicated by the government survey:

   (1) Because the grantor must be presumed to have intended to convey according to *his own boundary line* on that side, unless the deed, by clear and unmistakable words, indicates a contrary intent.

Wright vs. Day and another.

(2) Because the words " to Fox river " furnish the *more controlling call*, and can mean nothing less that the water's edge, or high-water mark of the stream.

(3) Because the words "along the meander line," etc., are *ambiguous*, and may mean, not the meandered line indicated by the government survey, but simply the winding line along the shore where the land and water meet at ordinary high-water mark; and the latter meaning, being the only one consistent with the previous call, must be preferred.

(4) Because all the facts and circumstances in evidence in this action render it extremely improbable that either of the parties to the deed, at the time of its execution, *intended* any other construction than that here adopted.

APPEAL from the Circuit Court for *Winnebago* County.

Ejectment. The facts are fully stated in the opinion. Finding for defendants; and judgment dismissing plaintiff's complaint upon the merits, and for costs; from which he appealed.

*Moses Hooper*, for appellant, argued that the words "meander line," as used in the west, had a well-defined meaning. *Railroad Company v. Schurmeir*, 7 Wal., 272; *Yates v. Judd*, 18 Wis., 118; *Walker v. Shepardson*, 4 Wis., 486; *Wisconsin River Improvement Co. v. Lyons*, 30 Wis., 61. The parties must be presumed to have used these words in this well-defined sense. See 1 Tay. Stats., 749; Houck on Rivers, sec. 151; *Middleton v. Pritchard*, 3 Scam., 510; opinion of WHITON, C. J., in *Jones v. Pettibone*, 2 Wis., 308; opinion of COLE, J., in *Martin v. Curlin*, 19 Wis., 454. The expression "meander line," as used in the conveyance, indicates distinctly that well-defined, certain and fixed line, known by all persons acquainted with government surveys, by that name and no other. To contend that the "meander line" is not the government line, is to surrender a fixed, definite boundary for a variable line, adjusting itself to the stage of the water and the alterations in the course of the stream.

*Felker & Weisbrod*, for respondent, contended that meander lines were not boundaries, and were not known in the acts and

laws of congress. *Railroad Company v. Schurmeir*, 7 Wal., 272; 2 Wis., 308. The first boundary line mentioned in the conveyance extends "to Fox river," and it is a settled rule of construction that lines thus described run to the center of the river. *Jackson v. Loan*, 12 Johns., 952; 20 Wis., 432; 21 Pick., 295. The acquiescence of *Wright* for so many years afforded strong evidence of his intention to convey to Fletcher his interest in the bed of the river. If any ambiguity existed in the deed, it was a latent one, and must be interpreted strictly against the grantor and in favor of the grantee. Where the grantor intends to restrict his grant, the restriction must be in distinct words, and where a grant is made to touch the water of a river, and the river is not expressly excepted, one-half the bed of the stream is included by construction of law. *Luce v. Carley*, 24 Wend., 451; *Newhall v. Ireson*, 8 Cush., 595.

DIXON, C. J. The sole question in this case is upon the meaning and effect of the words, *the meander line of said river*, occurring in the description of the land conveyed by the plaintiff to Fletcher in 1855, and which description, or that part of it material to our present inquiry, was as follows: "Thence due south, parallel with the west line of Division street in Jackson's plat of said city, to Fox river, thence northwesterly and along the meander line of said river to the southeast corner of lot No. five." The plaintiff showed title under a patent from the United States, of a tract of land bordering upon the Fox River, a navigable stream, the line of which land on that side had been meandered according to the laws and regulations of congress governing the survey and subdivision of the public lands. Subsequently the plaintiff conveyed a portion of the same tract to Fletcher by the deed containing the above description, and Fletcher afterwards conveyed to the defendants, who now claim and hold under the same conveyance. The premises in controversy, to which the plaintiff claims title under the patent, but of which the defendants are in possession

Wright vs. Day and another.

asserting title under the deed, are understood to be a narrow piece of land lying between the meandered line run by the government surveyors and indicated upon the plats or maps returned by them to the land office, and the line between land and water or the water's edge of the. river on the same side. As is very frequently the fact with such surveys, the meandered line of the surveyors and the actual water line of the river do not correspond, but there intervenes between the two the strip of dry land in controversy lying along the front of the premises conveyed by the plaintiff to Fletcher, and by the latter to the defendants; and the question is, whether the defendants are to be deprived of such river frontage now claimed and possessed by them, or not. The complaint indeed describes all the land between the meandered line and the middle line or thread of the river, but the substantial subject of litigation is supposed to be the dry land above spoken of, and of which the defendants are in possession claiming title as above stated. The plaintiff insists that the meandered line is the limit or boundary, on the side next to the river, of the land conveyed to Fletcher, while the dependants contend that Fletcher, and they under him, took to the river as their boundary. This suit was brought to test the validity of these respective claims.

The court is of opinion that the defendants take to the river or actual water line, and do not stop at the meandered line according to the position assumed by the plaintiff. This conclusion is based upon two or three considerations which appear to us to be quite controlling and decisive of the question.

The first is, that the meandered line of land bordering upon a navigable stream or river is never considered the boundary line of the government subdivision on the side next to the river, but that the purchaser from the government takes to the margin of the stream or water's edge, and becomes the unqualified owner of all land lying above ordinary high-water mark of the stream. *Railroad Co. v. Schurmeir*, 7 Wal., 272; *Wis. Riv. Imp. Co. v. Lyons*, 30 Wis., 61; *Arimond v. Green Bay and*

*Mississippi Canal Co.*, 31 Wis., 316.   The meander lines run in surveying fractional portions of the public lands thus bordering upon navigable rivers, are run, not as boundaries of the tract, but for the purpose of defining the sinuosities of the banks of the stream, and as the means of ascertaining the quantity of the land in the fraction, and which is to be paid for by the purchasers.   *Railroad Co. v. Schurmeir.*   The plaintiff, being the owner of all the land to the river, and not stopping at the meandered line as his boundary, at the time of his conveyance to Fletcher,· must be presumed to have conveyed, and to have intended so to do, as he himself held, and according to his true boundary on that side, unless the deed, by clear and unmistakeable words, evinces a contrary intention, and a design to make the meandered line a new boundary in the direction towards the river.   The deed contains no such words.

The second and all controlling consideration in our judgment is that which arises upon the call in the description, " *to Fox River.*"   The starting point named in the deed being first found by the surveyor, he is to proceed thence along the line indicated, and not to pause in his progress until he *reaches* Fox river, which can mean nothing less than the water's edge or high-water mark of the stream.   This is the most material, certain and prominent object referred to in describing the location and quantity of the land granted; and it seems scarcely necessary to advert to the rule which gives controlling effect to such objects or calls.   The line measures *to the river*, and that must govern in this case, unless overcome by other words of description or objects designated of superior influence, of which the deed contains none.   The words relied upon for this purpose, to control the survey and cut short the line, are those which immediately follow, namely; " thence northwesterly and along the meander line of said river."   It is assumed or argued in support of this position, that the " meander line " of the river here spoken of, and the meandered line of the government survey, are identical, and that the parties to the deed so

understood and intended. If the words made use of had been, "thence along the meander line according to government survey," the intent to stop at that line would have been more clear and certain, but still it would have been a call of inferior significance and certainty when compared with the other one also given, namely, that "to Fox river." If such had been the words of description, · is barely possible that it might have been held that the surveyor should pursue his course to Fox river, and, then retracing his steps to the meandered line, should thence follow that, according, to the view taken by counsel for the plaintiff. But with the words of description as they now are, and as the parties saw fit to employ them, it is impossible, we think, that any such position can be maintained. There is a double uncertainty attaching to what the plaintiff seeks to make the superior and paramount call of the deed. The meandered line is in any event a less certain call, and consequently inferior in dignity and importance to that of the river itself; and, besides this, it is by no means clear that the words "the meandered line of said river" were intended by the parties to signify the meandered line of the land according to government survey. It is true, the parties might by possibility have so intended, but the words employed do not make such intention clear and unambiguous. The requirement to go to the river tends very strongly to repel, and we think does fully repel and overcome, any inference to be raised from the mere use of the word "meander" in describing the line or course to be pursued after the river has been reached. And this is all that counsel for the plaintiff contends for. He infers, and also asks the court to infer, from the use of that word, that the meandered line of the government survey alone was intended. If it were impossible in the application of the word that it should signify any other line than that run by the government surveyors, less difficulty would be experienced in concurring in the views expressed by counsel. But there exists no such impossibility. It was clearly possible for the parties to use the

word to signify the indirect course of the river or of the flow of the water within its banks, or the winding and circuitous line formed along the shore, where the land and water meet at the surface of the stream at ordinary high-water mark. It was not impossible for the parties to use the word in the latter sense, which was a strictly grammatical and proper use of it; and it seems very clear to us under the circumstances that such was the sense in which they intended to use it, and in which it must now be applied. Such use was consistent with the other words of the deed and with the clearly expressed intention to go to the river, and the interpretation thus given accords with the rule, always preferred in the construction of written instruments where the same is possible, that some effect should be given to all its words rather than that any should be rejected as inconsistent, unmeaning or redundant. This construction gives full force to the very important words " to Fox river," which must otherwise be rejected as unmeaning or redundant, and it also avoids conflict with the rule particularly observed in construing instruments of this nature, that the superior and more certain call of the grant is not to be postponed or set aside in order to conform to one which is inferior and less certain in its character.

A third consideration which may be properly alluded to as having a very considerable influence over our conclusion, is the strong improbability under the circumstances that the parties themselves to the deed, at the time of its execution and delivery, contemplated any such construction as is now attempted to be put upon it by the plaintiff. It seems clear from all the facts as we understand them, from the conduct of the parties both at the time of the making of the deed and afterwards, and especially from the silence and acquiescence of the plaintiff for many years in the title and right of possession asserted by the grantees under the deed, that the claim now set up by him is an afterthought, suggested most likely from subsequent reading of the deed, and very probably long subsequent to its execution and

delivery. It is highly improbable that either he or the grantee had any such thought or expectation at the time of the execution and delivery; and if there be anything in that cardinal rule of interpretation by which it is said that the intention of the parties, when ascertained and as made known by the whole instrument, should govern, it would seem that place and weight should be given to it in a case of this kind as against technical objections and nice points of construction long afterwards raised up for the purpose of defeating such intention.

*By the Court.* — Judgment affirmed.