Boorman vs. Sunnuchs.

## Boorman vs. Sunnuchs.

RIPARIAN RIGHTS: BOUNDARIES: TITLE BY RELICTION. *(1-3) Riparian rights on meandered lake. (4, 5) Patentee takes to water line. (6, 7) Title by reliction: Proof of character of reliction. (8) Who owns lake bed?*

PRACTICE IN EQUITY. *(9) Waiver of objection to equitable relief. (10) Supplemental complaint.*

1. The owner of land bounded by any *meandered lake or pond* in this state, takes, as such, no fee in the bed or soil under the water; but has a right to accretions formed by slow and imperceptible degrees upon or against his land, and to those portions of the bed of the lake or pond adjoining his land which may be uncovered in the same manner by recession of the water.

[2. The other rights, also, belonging to the riparian owner as such, upon a *navigable* lake (as defined in *Diedrich v. C. & N. W. U. R'y Co.*, decided herewith), such as that of access to and from the lake upon his land, that of building wharves and piers in aid of navigation, and that of having the waters flow to his land without artificial obstruction, belong to the riparian owner upon any meandered lake in this state, whether actually navigable or not, so far as they can be applied.]

3. The riparian rights above defined are subject to the paramount right of the public to use navigable lakes or ponds for the purposes of commerce and navigation.

4. If the meandered line of a lake or pond and the actual water line differ, the latter is the true line of a lot bounded in terms by the meandered line.

5. Plaintiff became owner, by divers mesne conveyances, of certain lots of land patented by the United States, and in all the deeds the lots are designated by their numbers as specified in the government survey and plat. It appears from the field notes of such survey (which are the foundation of the plat), that the lines of the lots extended to and from the pond. *Held*, that the lots, as patented, extended to the pond, although the then existing line of the pond, and the meandered line as run and marked, may have differed.

6. One who claims land by reliction, should show the several stages of the process through longer or shorter periods, as determined by the width of the strip uncovered or by comparison with the bank or other known and fixed objects, so that the court may have definite and satisfactory data upon which to determine the character of the reliction; and it was error in this case to determine such a claim in favor of the claimant upon mere proof that persons watching the process could not *see* the water recede.

7. The pond here in question, when originally surveyed, had an area of 160 acres, and a depth of four or five feet. By the spring of 1874, a strip of the original bed, several rods in width, had become bare; and the depth of water remaining was a little more than one foot. In the summer following, the water entirely disappeared. A little water gathered there in the spring of 1875, but soon disappeared; and the pond seems to have permanently dried up. Upon evidence of these facts, the court intimates an opinion that, as to that portion of the lake bed which was laid bare after the spring of 1874, the water disappeared too suddenly and sensibly to vest the title in the riparian owner; but it was not necessary to decide that question on this appeal.

8. Whether the United States or this state is the owner of that part of said lake bed (if any) to which the former riparian owner may fail to show title by reliction, is not here considered; plaintiff's right to the equitable relief sought being dependent upon proof of his own title.

9. In an action to quiet title, where the case made is of equitable cognizance, the objection that plaintiff had a legal remedy, by ejectment, must be taken by demurrer or answer, or it is waived.

10. This action was originally brought to quiet plaintiff's title to the strip of land in the original lake bed then laid bare by the recession of the water; and part of the relief sought was, that defendant's *entry* of the land in the U. S. land office should be declared void. On the trial, more than a year afterwards, it appeared that the lake had in the mean time wholly dried up, and the defendant had received a *patent* of the land relicted. *Held*, that plaintiff was properly allowed to set up these facts by *supplemental complaint*, alleging title in himself to the whole of the former bed of the lake; and there was no abuse of discretion in permitting such supplemental complaint to be filed without the imposition of *terms*.

APPEAL from the Circuit Court for *Dane* County.

In the government survey and plat of sections 33 and 34, in town 9, range 11 east, in the county of Dane, a certain pond, four or five feet deep, and covering about 160 acres of land (the same being within the limits of those sections), was meandered, and fractional lots were laid out abutting upon the pond. These lots were patented by the United States, in 1840 and 1843, to different grantees, by their respective numbers on the plat. In 1864, the plaintiff, by divers mesne conveyances from the patentees and their grantees, became the owner in fee of several of these lots.

About the time when plaintiff became such owner, or soon thereafter, the waters of the pond commenced to recede from its original banks or shore; and this process continued until, at the time this action was commenced (in the spring of 1874), a strip of the original bed of the pond, several rods in width, was laid bare, and the depth of water in the pond had decreased to a little more than one foot. In 1873, the defendant entered upon the strip of land between the original meander line and the pond as it then was, and made some improvements thereon, claiming that his entry was under the "Homestead Act," and that it included the whole bed of the pond. He represented to the commissioner of the general land office at Washington, that the bed of the pond had become dry, and

asked that the same might be surveyed and put in market. A survey thereof was accordingly ordered and made, and the land within the meander line (which varied somewhat from the actual water line when the original survey was made) was divided into lots. After this action was commenced, the lots last mentioned were, under the homestead and preëmption laws of the United States, patented by the United States to the defendant.

In the summer of 1874, the water of the pond entirely disappeared. A little water gathered there in the spring of 1875, but it soon disappeared, and the pond seems to have permanently dried up.

This action was brought to quiet the plaintiff's title to the strip of land between the original meander line and the actual water line. It is alleged in the complaint that the plaintiff is the owner in fee and in the actual possession of the fractional lots above mentioned, and that, by virtue of such ownership, he is the owner in fee of the strip of land recovered from the pond by the recession of the waters thereof. This strip is described by metes and bounds in accordance with a survey made for the plaintiff a few days before the action was commenced. This survey agrees with one made in the winter of 1873–4 by a person employed by the land office to survey the bed of the pond. The complaint also avers that defendant has at divers times unlawfully entered upon said strip of land, plowed up and broken the soil, and committed other acts of trespass, to plaintiff's damage, etc., and that he is insolvent. The relief demanded is, that the plaintiff recover damages for such acts of trespass; that defendant's entry of and claim of title to the strip be declared void as against the plaintiff; and that he be decreed to release his claim to the land.

The answer contains a general denial, and alleges specially that the pond had become dry; that the entry of the defendant is valid; that by virtue of a certificate of such entry he went into possession of the whole of the land inside the me-

ander line, under the homestead and preëmption laws, and intends to perfect his title in fee thereto.

On the trial, in July, 1875, it appeared that after the action was commenced, the land claimed by the defendant was patented to him by the United States, and that the waters of the pond had entirely disappeared. The plaintiff thereupon, by leave of court, filed a supplemental complaint, stating those facts and claiming title by reliction to the whole bed of the pond.

The defendant answered the supplemental complaint, admitting the issue of the patent, and that the pond had dried up, but denying that it dried up after the action was commenced. It is also averred that the drying up of the portion of the pond affected by the supplemental complaint, took place perceptibly, and not by gradual reliction.

A further trial of the matters presented by the supplemental pleadings was had in November, 1875, and resulted in a finding by the court, that, by the slow and insensible recession of the water and the drying up of the pond, the plaintiff became the owner in fee of that portion of the bed of the pond bounded by converging lines extended from the perpendicular lines of his lots to the center of the bed of the pond.

Judgment was entered for the plaintiff for the relief demanded in the original and supplemental complaints; and defendant appealed from the judgment.

For the appellant, a brief was filed by *Vilas & Bryant*, and the cause was argued orally by *Mr. Vilas.* They contended, 1. That plaintiff's land, derived by conveyance from the government, was bounded by the edge or bank of the lake; and that the meander lines run by the government surveyor are to be taken as intended for the bank of the lake, and that bank to be the actual mark on the ground represented by those lines on the plat (*Mariner v. Schulte*, 13 Wis., 692; *Wis. Riv. Imp. Co. v. Lyons*, 30 id., 61; *Arimond v. Canal Co.*, 31 id., 61; *Wright v. Day*, 33 id., 260; *Railroad Co. v. Schurmeir*, 7

Wall., 272; *Wheeler v. Spinola*, 54 N. Y., 285; *C. & St. L. R. R. Co. v. Valentine*, 19 Barb., 484; *Bradley v. Rice*, 13 Me., 198; *State v. Gilmanton*, 14 N. H., 467); that the title to the land covered by the water of the lake was never in the plaintiff, but remained either in the state as sovereign proprietor, or in the United States like other public lands not sold (*Pollard's Lessee v. Hagan*, 3 How. (U. S.), 212; *Strader v. Graham*, 10 id., 82; *Smith v. Maryland*, 18 id., 71); that as this lake furnished no highway to mill or market for the products of the country, and was not comprehended by sec. 2, ch. 41, R. S. (Tay. Stats., 749), being neither a river nor a stream (*State v. Gilmanton, supra*), there can be no presumption of its navigability from the fact of its being meandered; that it is only the beds of *navigable* waters which belong to the sovereign in trust for the public (*Pollard's Lessee v. Hagan, supra*), and titles to lands covered by unnavigable waters are governed by the same rule as titles to dry land; that the owner of lands extending into or across unnavigable streams may convey by metes and bounds either the land uncovered by water, or that covered by water, or a tract composed partly of one and partly of the other, the only question in construing such a conveyance being as to the intention of the grantor (WALWORTH, Ch., in *Canal App. v. The People*, 17 Wend., 570, 596 et seq.; *Wheeler v. Spinola, supra*; *Halsey v. McCormick*, 13 N. Y., 296; *Lapish v. Bangor Bank*, 8 Greenl., 85; *Hatch v. Dwight*, 17 Mass., 289; *Hartshorn v. Wright*, Pet. C. C., 64); that the title to the land covered by the bed of this lake remained, therefore, in the United States, which held title to this, as to other unsold public lands, not as sovereign, but simply as a landed proprietor, having no different rights from other land-owners, except that it holds its lands free from taxation and that congress has the sole power to make needful rules and regulations for the disposition thereof (*Pollard's Lessee v. Hagan, supra; Gibson v. Chouteau*, 13 Wall., 92); and that the question presented by the case, therefore, is, whether,

when the water dries away from the bed of an unnavi-
gable pond, which, in connection with other lands, is the
private property of A., the title to any of his land is divested
by that fact, and transferred to B., who owns land abutting
upon the water-covered land of A.   2. That the rule of the
common law in reference to *alluvion* upon lands bordering on
navigable waters, does not extend to *relicted land;* and that
the latter is not lost to the sovereign.   Schultes on Aquatic
Rights, 109, 118, 121, 127, 138; 2 Rolle's Abr., 169, pl. 11;
Dyer, 326, note, supposed to have been written by TREBY, C.
J. ; 6 Bac. Abr., " Prerogative," B., 1 and 3; *King v. Lord
Yarborough*, 3 Barn. & Cress., 91; *Gifford v. Lord Yarbor-
ough*, in House of Lords, 5 Bing., 165; 2 Bligh, N. S., 147.
The expression of Blackstone (2 Com., 262), confounding al-
luvion with dereliction, is criticised by counsel in 3 Barn. &
Cress., as loose and hasty, and utterly unsupported by any
previous writer.   But, however that may be, the doctrine of
title by either accretion or reliction is wholly inapplicable to
unnavigable waters.   When islands or accretions are formed
in these, they belong to the owner of the soil on which they rest;
and if in a stream whose opposite banks are owned by differ-
ent proprietors, the middle thread of the former stream, traced
on the new island, bounds their respective parts of it.   *Deer-
field v. Arms*, 17 Pick., 41; *Trustees v. Dickinson*, 9 Cush.,
544; 2 Rolle's Abr., 168, pl. 2; Schultes on Aquatic Rights,
122, 138.   See also *Wheeler v. Spinola*, *supra*, and *Ledyard
v. Ten Eyck*, 36 Barb., 124.   4. That there was no evidence
in this case that the gain of land caused by the recession of
the water was *imperceptible*, in the common-law sense of that
word; that the inability of witnesses to see the water recede
was no proper test of the character of the reliction.   The dis-
cussion in 3 Barn. & Cress., *supra*, illustrates the true sense
of the common-law doctrine.   5. That as the defendant, at the
commencement of this action, was in adverse possession of the
land in dispute, plaintiff's proper remedy was by ejectment,

and he could not maintain an action to quiet title. *Lee v. Simpson*, 29 Wis., 333; *Wals v. Grosvenor*, 31 id., 681; *Shaffer v. Whelpley*, 37 id., 334; *Pier v. Fond du Lac*, 38 id., 470.   6. That it was too late, after a trial, to allow the filing of a supplemental complaint (*Garner v. Hannah*, 6 Duer, 262), and certainly such permission should not have been granted without terms, thus imposing on defendant the expense of two trials.

For the respondent, a brief was filed by *Gregory & Pinney*, and the cause was argued orally by *Mr. Pinney*.   They contended, 1. That the boundary of plaintiff's land was the edge of the waters of the lake at ordinary low water, the calls of the patent, found in the field notes of the survey, being to and from the lake, and not to and from the meander line, and the latter line having been run to fix the price of fractional lots on its margin, and not as an actual boundary; that congress has adopted the rule of the common law as to riparian ownership; that as to *navigable* streams, lakes, etc., such ownership stops at ordinary low-water mark, while in all other cases it goes to the thread or center; and that it was the intention of the United States that the patentees of fractional lots upon meandered lakes should take to the water's edge with all the rights of riparian owners.   Act of congress of May 18, 1796; 1 Lester's Land Laws, 703, 714; *Railroad v. Schurmeir*, 7 Wall., 275; *Wright v Day*, 33 Wis., 261; *Forsyth v. Smale*, Ch. Leg. News, July 1, 1876, p. 322; *Gavitt v. Chambers*, 3 Ohio, 495; *Middleton v. Pritchard*, 3 Scam., 510, 520; *Shelton v. Maupin*, 16 Mo., 124; *Kraut v. Crawford*, 18 Iowa, 549; *Bradley v. Rice*, 13 Me., 201; *Nelson v. Butterfield*, 21 id., 229; *Hathorn v. Stinson*, 10 id., 224, 238; *Wood v. Kelley*, 30 id., 47, 54; *Waterman v. Johnson*, 13 Pick., 261; *State v. Gilmanton*, 9 N. H., 461; *Canal Comm'rs v. The People*, 5 Wend., 423, 432; *Rice v. Ruddiman*, 10 Mich., 125; *Seaman v. Smith*, 24 Ill., 521; *Jones v. Soulard*, 24 How. (U. S.), 41; *County of St. Clair v. Lovingston*, 23 Wall., 46; 2 Washb.

R. P., 678–9. 2. That as riparian owner plaintiff was entitled to the fee of all lands which were uncovered by the gradual and imperceptible recession of the waters of the lake (1 Black. Com., 208, 206 and note (c); *Rex v. Yarborough,* 3 Barn. & Cress., 91; *County of St. Clair v. Lovingston, supra; Deerfield v. Arms,* 17 Pick., 41; *Jones v. Johnston,* 18 How. (U. S.), 150, 157; *S. C.,* 1 Black, 222); that the court in this case followed the rule for dividing such gained land between the riparian owners, laid down in the two cases last above cited; that the ownership of the bed of a navigable stream is in *the state,* as sovereign, for the public use (*Pollard's Lessees v. Hagan,* 3 How., 219), and the rule is the same as to navigable lakes or ponds (*Murry v. Sermon,* 1 Hawks, 56); that, as to lakes or ponds not navigable in fact, but surveyed in the same manner as navigable streams or lakes, the same rule in respect to alluvion, etc., should apply as to the latter; and that, as the public ownership of the state is an incident of and attendant upon the public use of which a stream or lake is susceptible, where the public use does not exist, the public ownership must also fail. 3. That the court properly permitted the filing of the supplemental complaint. *Edgar v. Clevenger,* 2 N. J. Eq., 261–2; *Candler v. Pettit,* 1 Paige, 168; *Stafford v. Howlett,* id., 200; *Eager v. Price,* 2 id., 333, 337; *Hasbrouck v. Shuster,* 4 Barb., 285; *Pinkus v. Peters,* 5 Beav., 253; *Malcolm v. Scott,* 3 Hare, 39, 64; *Wood v. Mann,* 2 Sum., 316. 4. That the objection to equity taking cognizance of such a case, for want of actual possession by the plaintiff, must be taken by demurrer or answer, and an answer merely denying plaintiff's claim of possession is not sufficient (*Jones v. Collins,* 16 Wis., 594); that, the objection having been waived, there was no error in rendering a decree settling the rights of the parties (*Tenney v. State Bank,* 20 Wis., 152, 164; *Peck v. School Dist.,* 21 id., 522; *Truscott v. King,* 6 N. Y. 147, 165); and that where plaintiff's title is clear, and defendant's insolvency is shown, equity may interfere for the purpose of *quiet-*

*ing the possession*, or preventing irreparable mischief or a *multiplicity of suits*, etc. *Livingston v. Livingston*, 6 Johns. Ch., 497; *Storm v. Mann*, 4 id., 21; *Nicoll v. Huntington*, 1 id., 166, 175; *Kerlin v. West*, 4 N. J. Eq., 449; *Hart v. Mayor*, 3 Paige, 214; *Smallman v. Onions*, 3 Brown's Ch., 621; Willard's Eq., 382.

LYON, J. In the cases of *Diedrich v. The N. W. U. R'y Co.*, and *Delaplaine v. The C. & N. W. R'y Co.* (decided herewith), we had under consideration questions as to the rights of owners of lands bounded by meandered lakes or ponds, in such bodies of water and the beds thereof. For reasons stated in the opinions in those cases, and which it is unnecessary to repeat here, we reached the conclusion that such owners take no fee in the bed or soil under the water by virtue of their riparian ownership; but that, by virtue thereof, they have certain riparian rights in both the water and bed. Among these are the rights to go upon the water from their adjoining lots, and upon the lots from the water; to build wharves and piers in front of their lots in aid of navigation; and to have the waters flow to the lots without artificial obstruction. To these may be added the right of the riparian owner to accretions formed by slow and imperceptible degrees upon or against his land, and to those portions of the bed of the lake or pond adjoining his land uncovered in the same manner by the dereliction of the water therefrom. These rights by accretion and reliction will be hereafter further considered.

It may be conceded that all of these riparian rights are held subject to the paramount right of the public to use such lakes or ponds for the purposes of commerce and navigation, when the same can be so used.

It is true that in the cases above mentioned we had to deal with confessedly navigable bodies of water; but no good reason is perceived why the same principles are not applicable, so far as they can be applied, to any meandered lake or pond,

whether it be navigable in fact or not. The cases on the subject make no distinction between navigable and nonnavigable bodies of water, in determining the nature and extent of such riparian rights as may exist in both. It seems to us that the sounder and better rule is, that when any lake or pond, although not navigable, has been meandered by the government surveyors, and the government sells by such survey, the purchaser of a lot bounded by it, while he takes no fee in the bed of the lake or pond, does take therein and in the waters the same riparian rights, as appurtenant to his lot, which he would have taken had the lake or pond been navigable in fact. This rule is easy of application, and we think it best accords with the intention of the government in meandering bodies of water and selling lots abutting thereon. Had the government intended that a grant of land upon a navigable body of water should confer greater or less rights upon the grantee than a grant of land upon one not navigable, it is fair to assume that the laws of the United States, or, at least, the rules and regularities of the land department, would so provide. But, so far as we are advised, there is no such provision.

Another rule applicable to this case is, that if the meandered line and the actual water line differ, the latter is the true line of a lot bounded in terms by the meandered line. *Railroad Co. v. Schurmeir*, 7 Wall., 272 (286); *Wright v. Day*, 33 Wis., 260; *Jones v. Pettibone*, 2 id., 308.

In this case the plaintiff became the owner of the lots bounded by the pond in question, by divers mesne conveyances, from the United States, in all which the lots are designated by their numbers as specified in the government survey and plat thereof. The field notes of such survey (which are the foundation of the government plats) were in evidence, and it appears therefrom that the lines of the lots extended to and from the pond. We conclude, therefore, that the lots of the plaintiff extended to the pond, notwithstanding the line of

the pond and the meander line, as actually run and marked, may differ. *Shufeldt v. Spaulding*, 37 Wis., 662.

We now come to consider the rights of the plaintiff to that portion of the bed of the pond between the original line of the water and the line thereof when the same was surveyed in the spring of 1874, and which was left uncovered by the dereliction of the water. The learned counsel for the defendant claims that although land reclaimed from the pond adjoining the lots of the plaintiff, by slow and imperceptible accretion, may belong to the plaintiff, the same principle does not apply to the bed of the lake laid bare by reliction. Without going into an extended discussion of the subject, it is sufficient to say that in our opinion the better reason and the weight of authority support the proposition that there is no distinction in this respect between land reclaimed by accretion and that uncovered by reliction. It was so held in *Jones v. Johnson*, 18 How., 156, where the supreme court of the United States adopted the rule laid down by Blackstone, that land gained from the sea either by alluvion or by dereliction, if the same be by little and little, by small and imperceptible degrees, belongs to the owner of land adjoining. 2 Black. Com., 261–2; see also *County of St. Clair v. Lovingston*, 23 Wall., 46.

The question remains, however, whether the land between the original water line and that of 1874 was gained in the manner above specified. The averment of the complaint is, that the waters of the pond, after it was meandered in the United States survey, and from then hitherto, have gradually and in an imperceptible manner receded, so that this strip of land "has thereby been gradually and so slowly uncovered and gained to the adjoining lands, that the progress thereof could not be noticed by one watching the same." The court found as a fact established by the evidence, that such strip of land was uncovered and gained as stated in the complaint. All of the evidence on the subject seems to be directed to the

proposition that the water receded so gradually that a person watching the process could not see it recede from the original bank.

We conceive that an erroneous test was applied to determine whether the reliction was of such a character as to entitle the plaintiff to that portion of the bed of the pond uncovered by it. It is very manifest that the water might have receded altogether too suddenly to have vested the title in the uncovered land in the plaintiff, and yet a person watching the pond be quite unable to see the waters recede. We take it that had the whole fall in the water occurred within a week, perhaps within a day, at a uniform rate, the human eye is not sufficiently acute to have detected the process. Yet if a portion of the bed was laid bare by a process so sudden, no one will contend that the portion thus uncovered became thereby the property of the owner of the land adjoining.

We can lay down no precise rule of universal application on this subject; but we think the plaintiff, by his proofs, should have given the court some more definite information than he has, of the progress of the falling or recession of the water. He should have shown the several stages of the process during longer or shorter periods of time, as determined by the width of the strip uncovered, or by comparison with the bank or other known and fixed objects, to the end that the court might have had some more definite and satisfactory data upon which to determine the character of the reliction. It seems to us that the court should not determine finally the rights of the plaintiff in that behalf on the evidence before us.

The case of *The King v. Lord Yarborough*, 3 Barn. & Cress., 91, contains some interesting remarks on this subject by ABBOTT, C. J., which accord with the views above expressed. It is to be observed, however, that the views of the chief justice in that case do not meet the approval of the Lord Chancellor in *Att'y Gen. v. Chambers*, 4 De G. & J., 70, who there states the rule more unfavorably to the plaintiff.

As to that portion of the bed of the pond which was covered with water when the action was commenced, we are inclined to think, from the evidence, that the water disappeared too suddenly and sensibly to vest the title to such portion in the plaintiff. Were this the controlling point in the case, we should probably so hold. But we have concluded that there ought to be another trial in order that the plaintiff may have an opportunity to supply, if he can, the defects in his proofs already mentioned; and a different state of facts may be proved at such trial. Hence, we think the better course is, to leave undetermined the question of the plaintiff's right to that portion of the bed of the pond, and send the case back for a retrial of all the issues.

The exigencies of the case do not require us to determine whether the United States or the state of Wisconsin is the owner of that portion of the bed of the pond to which the plaintiff may fail to establish title. The question is an important one, and not free from difficulty, but it is immaterial to the determination of this case. The plaintiff is entitled to the relief prayed in respect to the lands in controversy to which he establishes title in himself, and no further. Failing to show title in himself, he fails in the action, and it is of no consequence whether the title is in the defendant under his patent from the United States, or in the state, notwithstanding the patent.

Two points of practice were discussed in the arguments of counsel, which will now be briefly noticed. It is urged by counsel for the defendant that this action (which is in equity) should have been dismissed on the ground that the plaintiff has an adequate remedy at law. Without stopping to inquire whether it appears from the evidence that the plaintiff could have maintained ejectment to recover the land in controversy, or not, we think the objection comes too late. The case made in the complaint is one of equitable cognizance, and the judgment gives equitable relief. In such a case, the objection

that there is an adequate remedy at law, does not go to the jurisdiction of the court, and, unless taken by demurrer or answer, must be deemed waived. *Jones v. Collins*, 16 Wis., 594; *Tenney v. The State Bank*, 20 id., 152; *Peck v. School Dist.*, 21 id., 516. Here it was not taken either by demurrer or answer.

The other point is, that the court below erred in permitting the plaintiff to file a supplemental complaint, and especially in permitting this to be done without the imposition of terms. The law relating to the filing of supplemental bills or complaints is believed to be correctly stated in the brief of counsel for the plaintiff as follows: " A supplemental bill is necessary when, after the court has decided on the suit as framed, it appears necessary to bring some other matter before the court. It may be brought, not only to insist upon the relief prayed for in the original bill, but upon other and different relief, where facts which have since occurred may require it; as if, pending a bill to restrain proceedings at law upon a bill of exchange, the holder should obtain judgment in a suit at law. In such case the plaintiff in equity may file a supplemental bill, stating the facts and praying for repayment and indemnity. So, also, where new interests arise either before or after a decree, or where relief of a different kind or upon a different principle is required, a bill in the nature of a supplemental bill will be allowed." Story's Eq. Pl., §§ 332–348, and cases cited; id., § 351 b. It seems to us that this case comes within the above rules. The object of this action is to ascertain and enforce the riparian rights of the plaintiff in the bed of the pond, and the supplemental bill does not change the general scope of the action. It seems unnecessary to drive the plaintiff to an independent action to establish his rights (if he has any) in that portion of the bed uncovered by reliction *pendente lite*, when those rights may as well be adjudicated in the action already commenced. It best accords with the spirit of equity jurisprudence, to determine the whole

controversy in one action. Hence, we think it was not error to allow the supplemental complaint.

So far as terms are concerned, it was within the sound discretion of the court to impose them or not, and we cannot say that the failure to do so was an abuse of such discretion. Besides, we do not discover that the defendant demanded the imposition of terms, or excepted to the order of the court permitting the supplemental complaint to be filed without terms.

*By the Court.* — Judgment reversed, and cause remanded for a new trial.