JOHN J. CARR v. JOHN H. MOORE, AND GEORGE W. BRYAN v. JOHN H. MOORE.

**Boundaries:** RIPARIAN OWNERS: MEANDERED WATERS: ACCRETION AND RELICTION: EVIDENCE. The title of abutting owners on
1   waters which are meandered, under the law of this state, extends only to high water mark, and can only be added to by accretion or reliction. Evidence held insufficient under the rule to enlarge the area of the abutting owners by accretion.

**Same:** APPLICATION OF DOCTRINE OF ACCRETION AND RELICTION. A
2   lake with no defined shore, which fills up and dries out with the varying seasons and seldom exceeding five or six feet in depth, except in one or two places near the shore, generally swampy with rushes growing, fed solely by surface drainage and having only a shallow outlet, is not such a lake as will admit of the application of the doctrine of accretion and reliction.

**Same:** MEANDER LINE: Meandering a body of water does not de-
3   termine its character and in a strict sense a meander line is not a boundary, and where the surveyor meanders a body of

water proper to be meandered, the abuttiing owner takes title
to the actual water line, but if there is no body of water cor-
responding to the meander line, the adjoining owner is lim-
ited by that line and his land is not extended by accretion or
reliction.

Adverse Possession.    Where the title to land is in the general
government or the state, private ownership cannot be acquired
by adverse possession.

Swamp Land:    DETERMINATION OF:    TITLE TO SAME.    The swamp
land act of 1850 r quires that the federal government must de-
termine what land is swamp before title passed to the state,
and until this is done a grantee has only an inchoate right not
amounting to title.

*Appeal from Hamilton District Court.*—HON. J. R. WHIT-
AKER, Judge.

SATURDAY, JANUARY 24, 1903.

ACTIONS to quiet title in certain tracts of land, claimed
as portions of the bed of a lake, added to the lands of
plain iffs, respectively, by accretion or reliction.    Defend-
ant, by cross-petition in each case, asked that the tracts
of land in controversy be decreed to belong to him, as
owner under the swamp land grant.    By decree, the court
found in each case against the plaintiff as to his claim of
title, and against defendant as to the claim set up in his
cross-petition, and dismissed the petition and cross-pe-
tition.    Each party appeals.—*Affirmed.*

*Richard & Thompson* for plaintiffs.

*J. L. Kamrar* and *Douthart & Brendecke* for
defendant.

McCLAIN, J.—The controversy relates to portions of
the bed of what was at one time known as "Iowa Lake,"
claimed to have been a body of water situated in Hamilton
county, and in extent about a mile and a half each way,
of very irregular outline, with a shore line of over six

miles and an area of eight hundred and eighty-five acres. When the government urvey of the surrounding land was made in 1849, the so-called lake was meandered, and the two plaintiffs own lots platted by the surveyor as bordering on this meander line. The bed of the lake is now practically dry land, and plaintiffs claim portions of the bed as having been added to their adjoining lots by accretion or reliction, and ask that either the whole bed of the lake be decreed as owned in common by the adjoining proprietors in proportion to the extent of their assumed shore line, or that by lines running from the intersections of their boundaries with such assumed shore line to some point which may be found to be the center of the lake, portions of the lake bed may be set off to them in severalty. Defendant claims title to the entire bed of the so-called lake, within the meander line, under purchase of the same by his remote grantor from Hamilton county in 1896 as swamp land. As the claims of the appellants depend on the nature of the so-called lake, and the manner in which the water therein has receded or disappeared, it will be necessary to set out the facts in this respect as they appear from the record. There is practically no testimony of witnesses from personal knowledge as to the condition of the lake at the time of the government survey, but there is testimony showing substantially its condition from a time within ten years subsequent to the original survey down to the present time. About ten years after the survey, although previous to that time it had contained water, the so-called lake became practically dry during one season. Subsequently it refilled with water; but around its margins, and during some seasons throughout its entire extent, with the exception of perhaps one or two places where there was considerable depth of water (at one of these deeper points there is still a so-called pond), it was grown up with rushes and grass. It was swampy in character,—the bottom composed of prairie mud and a peaty substance. It

had no definite shore line, but the ground around it sloped gradually down to and under the water. When full of water, the depth over its entire extent, with the exception of the one or two deeper places above referred to, did not exceed five or six feet, and it was shallower in the central portion; its greatest depth being along its sides. It had no s rings or other subterranean sources of water supply, nor did it have any definite inlet, the water coming into it in the wet season from the general surface drainage of the surrounding country. It had a shallow outlet, called a creek, through which water flowed from it when it was filled. This remained its substantial condition, so far as observed by witnesses, for about twenty years after it had become dry, within ten years of the survey; and after this period of twenty years the water became shallower, and it was less frequently filled, until about fourteen years before the bringing of these suits, when it became practically dry. At the present time, owing to the cultivation of the surrounding country, the surface water does not drain into it. Some of the witnesses liken it to ordinary prairie sloughs or ponds, save as to its greater extent. Within the memory of witnesses, the water has never, for any length of time, at least, come out to the meander line.

With the foregoing general statement of facts in mind, we think it unnecessary to follow counsel for plaintiffs in their discussion of the law of accretion or reliction. No doubt, the riparian owner adjoining a navigable river or lake may have his land extended by imperceptible additions thereto, or by like imperceptible recession of the water therefrom; and we do not now question the correctness of the contention that the same principle is applicable to non-navigable lakes. See *Boorman v. Sunnuchs*, 42 Wis. 233; *Warren v. Chambers*, 25 Ark. 120 (91 Am. Dec. 538, 4 Am. Rep. 23). But to furnish occasion for the application of the rules of law on these subjects, there must have

1. RIPARIAN owners; meandered waters; accretion and reliction; evidence.

been in this case a lake, and the addition to plaintiffs' lands must have been gradual and imperceptible. Where the abutting proprietor owns the title to the bed of the lake, as he does in some states, it is, of course immaterial when or how the shore is enlarged or the water recedes. *Railroad Co. v. Butler*, 159 U. S. 87 (15 Sup. Ct. Rep. 991, 40 L. Ed.85); *Gouverneur v. Ice Co.*, 134 N. Y. 355 (31 N. E. Rep. 865, 18 L. R. A. 695, 30 Am. St. Rep. 669). But in this state the title of abutting owners on waters which are meandered is held to extend only to highwater mark, the title of the bed being in the state. *Wood v. Railroad Co.* 60 Iowa, 456; *Serrin v. Grefe*, 67 Iowa, 196; *Noyes v. Collins*, 92 Iowa, 566. As to whether, under a patent from the United States, the title extends to the center of a stream or lake, or is limited to the margin thereof, is held by the United States supreme court to be dependent on the law of the state. *Hardin v. Jordan*, 140 U. S. 371 (11 Sup. Ct. Rep. 808, 35 L. Ed. 428). Therefore, unless the land held by each of the plaintiffs under title from the federal government was added to by accretion or reliction, as against the state their respective rights of ownership have not been extended beyond the boundaries fixed by the original patents.

It is enough to say in the present case that there is no evidence of accretion or reliction. It does not appear that the drying up of the water of the lake resulted in gradual and imperceptible increment to the lands of plaintiffs. It is perfectly clear that the water did not slowly recede to a different shore line surrounding a remoter body of water, which further subsequently disappeared, extending the titles of the surrounding owners to the center, for the testimony all shows that the lake was shallower in the center than in some of its portions near the original margin line. In short, there is a total want of such evidence as has been held sufficient in the cases on the subject to show imperceptible additions, enlarging the areas of land

owned by riparian proⅰrietors. *Jefferies v. Land Co.*, 134 U. S. 178 (10 Sup. Ct. Rep. 518, 33 L. Ed. 872); *St. Clair Co. v. Lovingston*, 23 Wall. 46 (23 L. Ed. 59); *Welles v. Bailey*, 55 Conn. 292 (10 Atl. Rep. 565, 3 Am. St. Rep. 48); *Mulry v. Norton*, 100 N. Y. 424 (3 N. E. Rep. 581, 53 Am. Rep. 206); *Murry v. Sermon*, 8 N. C. 56. The question we are now considering is practically controlled by the conclusion of the court in *Noyes v. Collins*, 92 Iowa, 566, which was analogous, save in that the lake was rendered dry within a year by drainage; but the recession of the water from the land was no more sudden during the year during which the lake there considered was drained than it was in this case when the lake became dry for the last time. The insuperable difficulty with plaintiffs' claims, under the doctrine of accretion or reliction, is that there is no evidence to support them. See *Hodges v. Williams*, 95 N. C. 331 (59 Am. Rep. 242).

From what has already been said, it is apparent that there was at the time of the original survey no lake, in the proper sense of the term, such as to give occasion for the

2. SAME: application of doctrine of accretion and reliction. application of the doctrines of accretion and reliction. While the evidence does not go back to the exact situation of affairs when the survey was made, it does indicate the general nature of this body of water at a time so proximate to the date of the survey as to enable us to know with sufficient definiteness what its character was at that time. It could not have been materially different from that subsequently existing, for the extent and depth were determinable by the outlet. This outlet, it is true, has within a few years been to some extent deepened or cleaned out, but not until the bed of the lake had become practically dry; the object of the drainage being to draw off more quickly the surface water temporarily accumulating from excessive rainfall.

But it is contended for plaintiffs that the character of the body of water was determined by the surveyor in meandering it, and that the approval of his survey by the United States land department constituted an adjudication which cannot now be questioned. The rule under which the surveyor acted was as follows: "You are also to meander, in manner aforesaid all lakes and deep ponds of the area of twenty-five acres and upwards; also navigable bayous; shallow ponds readily to be drained or likely to dry up are not to be meandered." Lester, Land Laws (Ed. 1860) p. 714. But the action of the surveyor in meandering the shore line of the supposed lake cannot make it a lake unless it is one. We have held that if, by evident mistake on the part of the surveyor, a meander line is run where there is no body of water proper to be meandered, the title of the owners of lots or fractional subdivisions on the meander line does not extend beyond. *Schosser v. Cruickshank* 96 Iowa, 414; *Schlosser v. Hemphill*, 118 Iowa, 452. As to whether the land within meander lines is swamp land or not is not conclusively settled by the act of the surveyor. *Rood v. Wallace*, 109 Iowa, 5. And in general, to the effect that the running of the meander line does not conclusively establish the character of the area beyond the meander line, as to whether it is river, lake, marsh, or unsurveyed land, see *Niles v. Cedar Point Club*, 175 U. S. 300 (20 Sup. Ct. Rep. 124, 44 L. Ed. 171); *State v. Portsmouth Sav. Bank*, 106 Ind. 435 (7 N. E. Rep. 379); *Kean v. Roby*, 145 Ind. 221 (42 N. E. Rep. 1011).

It is true, the meander line is not a boundary line, in a strict sense, and that if the surveyor does meander a body of water constituting a lake, which is proper to be meandered, then the title of the purchasers of the adjoining lots or fractional divisions extends to the actual water line; but if there is no body of water corresponding to the meander line, to which the ownership of the holders of the adjoining subdivisons can extend, then the meander

line limits the extent of the land conveyed. We conclude, therefore, that the original government patents to the lots now owned by plaintiffs did not confer any ownership beyond the meander line, and that the tracts of land thus conveyed by the government have never been extended by accretion or reliction so as to include any portion of the bed of this supposed lake.

What we have already said practically disposes of plaintiffs' claims by adverse posses ion of portions of the lake bed. Whether the title to the bed remained in the United States or passed to the state, no adverse possession thereof would be effectual, for the statute of limitations does not run as against the sovereign.

4. ADVERSE possession.

With reference to defendant's claims, set up in his two cross petitions, under which he asserts ownership under conveyance of the bed of the lake as swampland, it is enough to say that he does not show any selection of the land by the proper department of the federal government, or recognition by it of the land as passing under the swampland act. No doubt, the swampland grant was a grant *in praesenti*, but the passing of title under the grant depends on a question of fact, which cannot be adjudicated by the state and its grantees for themselves. The determination as to whether the land is swampland must be, in the first instance, by the proper department of the federal government; and, until some determination has been made, the grantee claiming under the swamp and grant has only at best an inchoate right, not amounting to a title. This has been settled in a case recently decided in this court. See *Ogden v. Buckley*, 116 Iowa, 352. Under the rule announced in that case, we cannot g ant to defendant any affirmative relief.

5. SWAMP land; determination of: title to same.

The decree of the lower court denying relief to either the plaintiffs or the defenda... ght, and it is AFFIRMED.