G. W. BRYAN, Appellant, v. ALFRED CHRISTIANSON et al.,
Appellees.

**JUDGMENT:** Conclusiveness—Adverse Possession. One may not, in an action involving title to real estate, set up a claim of title by adverse possession already adversely adjudicated against him, even though claimant has been long in possession since such adjudication.

*Appeal from Hamilton District Court.*—H. E. FRY, Judge.

MARCH 15, 1920.

THE nature of the action, the issues, and the decision, as stated by appellant, and which appellees concede to be correct, are stated thus:

"This is a suit in equity, to restrain the defendants from entering on the plaintiff's land and destroying his fences and obstructing the free use thereof by the plaintiff. A temporary injunction issued.

"The plaintiff claims to be the owner of the east half of the west half of Section 15 in Township 88, Range 23 West of the 5th P. M., Iowa, and has been in the absolute, peaceful, adverse, and undisturbed possession of the same, and every parcel thereof, for more than 18 years last past, continuously, under claim of right and color of title; that, during his possession, he has constructed fences and made valuable improvements on said land; that defendants have threatened and are about to enter upon the said premises and cut down the fences surrounding said land, and they are attempting to erect another fence upon the land; that said fence will be placed on plaintiff's land, if erected, and over his growing crops, and cause him irreparable injury, and plaintiff will be deprived of the free use and possession of his land. That, unless prevented by the mandate of this court, the defendants will enter upon plaintiff's premises,

and will destroy his fences and growing crops thereon, and deprive the plaintiff of the possession of a portion thereof, and plaintiff is without adequate remedy at law.

"Wherefore, he asks a writ of temporary injunction, to restrain defendants and each of them from entering on the premises or destroying plaintiff's crops, and from erecting any fence thereon, or obstructing or interfering with the plaintiff's free use and possession of the premises or any part thereof, and that, upon final hearing, said injunction be made perpetual, and for such other relief as may be found equitable in the premises.

"The defendants filed an answer and cross-bill, containing a general denial, and stating that the defendants Hoyer and Schulze are, subject to a contract of sale to defendant Christianson, the owners in fee of certain premises specifically described, setting out in detail a chain of title, and claiming that the plaintiff is a trespasser on said land. They also plead prior adjudication.

"They ask that they have a writ of injunction against the plaintiff from interfering with the possession of the defendants; they ask a decree quieting title in them, and damages in the sum of $1,000 for the use of said land.   [Appellant says that the plaintiff filed a reply, denying the allegations of the cross-bill, but we do not find it in the abstract.]

"The court dismissed the plaintiff's petition at his costs, and held that defendant was entitled to a decree quieting his title against the plaintiff on his cross-bill, and also that defendant have judgment against the plaintiff for the rental value of the land for three years, amounting to the sum of $289.68."

The plaintiff appeals.—*Affirmed.*

*D. C. Chase,* for appellant.

. *Burnstedt & Hemingway* and *Burnquist & Joyce*, for appellees.

PRESTON, J.—Defendants offered in evidence the plat of the land, as shown in the government plat book, which we here insert for a better understanding of the situation, and to avoid attempting a description. The plat shows Section 15.

## Section 15

One feature of this case was before this court in *Carr v. Moore*, 119 Iowa 152. The plaintiff here was a party plaintiff in that action, and, so far as plaintiff is concern-

ed, both cases cover the same land. That case is relied upon by defendants as an adjudication against the plaintiff herein, and they state that it was there held that plaintiff had no color of title or claim of right to the land now in controversy, as a basis for his claim of adverse possession. That action was brought in 1899 against Moore, then owner of Iowa Lake, plaintiff claiming to be the owner of the 24.14 acres necessary to square out his Lots 3, 4, and 5, into 40-acre tracts, and also claiming to be the owner of the disputed land, because of the recession of the waters of Iowa Lake, and because of the long possession of the claimed land by plaintiff. He asked to have the title to the land quieted in him, and for general equitable relief. The circumstances of that case will be referred to as briefly as may be, without repetition.

In 1896, plaintiff Bryan received title by deed to Lot 3, and in 1887, he received title by deed to Lots 4 and 5, all in the west half of said section. The plaintiff seeks in this action to take enough land from the bed of Iowa Lake to square out his lots into 40-acre tracts. The amount necessary to accomplish this is 24.14 acres. Iowa Lake is not, and, at least for a great many years, has not been, a lake. It is described in the case cited. The patent to the land was given to Hamilton County, in December, 1904. In February, 1896, it was conveyed by the county to Long, and the record title was in defendants at the time of the trial, by deed executed and recorded in October, 1915. During the time, until the defendants became the owners of the land in controversy, it was used very little for farming purposes, because of lack of drainage. Its previous owners were non-residents, for the most part, and paid little attention to the boundaries of the lake. The contiguous owners fenced in and used such parts of the lake bed as they desired. According to the evidence, it was used haphazard, because no one else was using it. The land was placed in a drainage

district in recent years, and the defendants have made costly and extensive improvements on the land in the way of drainage. The drainage ditch ran through a part of the 24.14 acres, and plaintiff ran a 10-inch tile to this ditch, with two branches of tile that lay partly on this land, at an estimated cost of about $100; but the tile was not sufficient to dry out the 24 acres, according to plaintiff's testimony. Defendants at first requested plaintiff to move back his fence to the government meander line, which they had resurveyed, and then served him with notice to remove; and then plaintiff brought this action, to restrain them from molesting him.

In 1898, one Scott, the then owner of Iowa Lake, gave a mortgage which covered the land in controversy, which mortgage was foreclosed by the bank in 1905. McMahon, who had, prior to the foreclosure suit, become owner of the land, subject to the mortgage, was made a party defendant to the foreclosure suit, as was also the plaintiff in this case. Plaintiff was personally served with notice, and did not appear. The decree cut off the rights of plaintiff, and foreclosed the mortgage. The land was sold, under the decree, to the bank, in satisfaction of the judgment, and, in December, 1906, that being the last day of redemption, McMahon redeemed. Plaintiff did not offer to redeem. Plaintiff maintained two or three wire fences on posts around this land, but put in no woven wire fences, as did his neighbor, Dwyer. There were no partition fences around the lake. Plaintiff did not pay, or offer to pay, any of the general or special taxes on the 24.14 acres. The land was assessed $10 an acre drainage tax, and had been sold therefor, and was redeemed by McMahon in 1913. The plaintiff's claim is based, as he puts it, on the thought that any property owner along the lake had a right to square out his land, and claim enough of the lake bed to do so. He says that, since the decision of the *Carr* case, he had never received any

title to this land from anybody, and that he never claimed that he had any. At the time of the trial, plaintiff had been using the land in controversy about 30 years, and, during part of that time at least, it had been fenced in the manner before stated. Part of the fence is woven wire, which has been there 5 or 6 years, and the woven wire fence is between Dwyer and plaintiff. Plaintiff says the description of every acre of his land adjoining the lake was referred to as government lots, and that, when he bought, it was described as fractional 40's and government lots.

"Q. You thought, along with others, you had a right to square out your 40 into the lake bed? A. Yes, sir. Q. That is what you base your right on here, isn't it? A. That and the possession. I thought I could square out my 40's regardless of the rights of anyone."

He testified that the rental value of the land for the years 1916, 1917, and 1918, was $4.00 or $5.00 an acre. Plaintiff does not claim that he has, or that he ever had, any color of title, so that we need not consider that question. He does claim that he had a claim of right, and that he occupied the property adversely under such claim. We pointed out, in *Goulding v. Shonquist*, 159 Iowa 647, that there must be some claim of right or title or interest in the property by which the possessor, in good faith, supposes he has a right to the property, as a basis for adverse possession. It is not necessary that the claim of right be a valid and legal one. It may be that plaintiff's claim, as originally made, that he thought he had a right to square out his 40-acre tracts from the lake bed, would be a sufficient claim of right upon which to base a claim of title by adverse possession, after occupancy for a sufficient time; but we deem it unnecessary to enter into any extended discussion of the question of adverse possession and claim of right, for the reason that, under the record, it is quite clear that plaintiff's

right, or claim of right, whatever it was, originally, was cut off and foreclosed against him in the *Carr* case, brought in 1899, as well as by the subsequent decree and adjudication in the foreclosure case, and all the proceedings. In the *Carr* case, plaintiff made the same claim of right that he now makes, and the additional claim that he was entitled to this strip by accretion or reliction; and such claims were adjudicated against him. Plaintiff testifies that he has no other claim, and no claim at all, arising since the determination of the *Carr* case. We think he may not now assert his title by adverse possession, based upon any claim or right which arose prior to that suit, which was adjudicated against him. Appellee cites *Center v. Cady*, 184 Fed. 605, and *May v. Sutherlin*, 41 Wash. 609 (84 Pac. 585), to the point that one who holds property contrary to and in defiance of a judgment of a court of competent jurisdiction is without color or claim of title, and that good faith is wanting.

There is some suggestion in argument that plaintiff ought to be protected under the Occupying Claimants' Act, and that the doctrine of acquiescence in division fence cases applies. The case seems not to have been tried on either of those theories. Plaintiff is not claiming for the value of improvements. The Occupying Claimants' Act provides a special remedy, and one seeking to avail himself of it must bring himself within the statute, and pursue the course there indicated. *Lindt v. Uihlein*, 116 Iowa 48, 56. The course to be pursued in such a case is provided in Code Section 2964 *et seq.*

Under the pleadings and evidence, we think the doctrine of acquiescence does not apply.

We reach the conclusion that the trial court rightly decided the case, and its decree is, therefore,—*Affirmed.*

WEAVER, C. J., EVANS and SALINGER, JJ., concur.