T. W. DWYER, Appellee, v. ALFRED CHRISTIANSON et al., Appellants.

**ADVERSE POSSESSION:** Possession Under Unfounded Claim. Possession of land under a good-faith claim as a riparian owner, though such claim was originally not legally maintainable, may ripen into absolute title by adverse possession, if continued for 10 years. So held where plaintiff purchased land held under such a claim, and held possession thereunder for some 20 years.

*Appeal from Hamilton District Court.*—H. E. FRY, Judge.

MARCH 15, 1920.

ACTION in equity to restrain defendants from building a fence and obstructing the free use by plaintiff of his land. A temporary injunction was issued. On the final hearing, the court decided that plaintiff has a good title by adverse

possession to the land in dispute, dismissed defendant's cross-petition, claiming title, and made the temporary injunction permanent against the defendants. The defendants appeal.—*Affirmed.*

*Price & Burnquist* and *Burnstedt & Hemingway,* for appellants.

*D. C. Chase,* for appellee.

PRESTON, J.—This case grows out of a similar state of facts found in *Bryan v. Christianson,* 188 Iowa 669. A plat will be there found, showing the general situation. The land in question in the instant case is Lot 2, and is north of Iowa Lake.

The plaintiff claims to be the owner in fee simple of the west half of the northeast quarter of Section 15, and that he has been in the absolute, peaceful, adverse, and undisturbed possession of the same and every parcel thereof for more than 18 years last past, continuously, under claim of right and color of title; that, during his possession, he has constructed fences and made valuable improvements on said land; that defendants have threatened and are about to enter upon the said premises and cut down the fences surrounding said land, and they are attempting to erect another fence upon the land, cutting from 17 to 18 acres off the south side of said land; that said fence will be placed on plaintiff's land, if erected, and over his growing crops, and cause him irreparable injury, and plaintiff will be deprived of the free use and possession of his land.

The defendants denied plaintiff's claim as to the south 17.42 acres. Defendants claim to be the absolute owners of the 17.42 acres, by virtue of a chain of title beginning with the patent from the United States to the state of Iowa, issued on December 7, 1904, and filed for record in Hamilton County, February 8, 1905, and from the state of Iowa

to Hamilton County, dated December 23, 1904, and filed for record, January 5, 1905, in Hamilton County, and from Hamilton County, through several grantors, to the defendants. They say that plaintiff's record title shows him to be the owner of all except the 17.42 acres, his deed from the original owner conveying only Government Lot 2, which consists of the north part of the south half of the west half of the northeast quarter.

The land in controversy was a part of what was formerly known as Iowa Lake, a body of meandered lake bed. There had been but very little water in it for more than 30 years. No patent was issued to this land by the government until 1904. At an early day, the surrounding landowners, including plaintiff's grantor, under claims of rights therein, had squared out their lands, so as to make them correspond with the congressional subdivisions. There had been a government survey of the lake bed, and, after the meandering line had been shown by the survey and plat filed, the land had been laid out in government lots, including Lot 2. They fenced, tiled, cultivated, and improved said lands. One Hurd, plaintiff's grantor, had made such a claim to the land in controversy. He had fenced and occupied it, and later leased it, with his other land. On March 1, 1899, he conveyed Lot 2 to plaintiff, 62.58 acres. The remaining 17.42 acres, the land in question, was then being used and had, for some years prior thereto, been used by said Hurd, in connection with the 62 acres. He did not include the 17 acres in the deed to plaintiff, but he was then using it, and had leased it to others, as he had been for many years in the past, under the claim of riparian ownership. At that time, it was fenced, the same as it had been for a good many years before. There is some conflict in the testimony at this point. Hurd was a witness for the defendants. He had had some trouble with plaintiff, and appears to have been hostile to him. He attempts to contra-

dict plaintiff's testimony as to some of these matters, but, under cross-examination, he substantially admits, though apparently with some reluctance, the plaintiff's claim.   Another party was with plaintiff, at the time of the negotiations with Hurd for the purchase by plaintiff of the land. It is fairly established that plaintiff was led to believe, and did believe, that, when he received his deed from Hurd, he would have a right to move upon and claim and hold the land in controversy.   As we understand his claim, he contends that he succeeds to Hurd's original claim, and, as well, that he had and claimed an interest or right in the land, by having paid Hurd therefor.   Plaintiff paid $2,800, and claims that he was paying for the 80 acres at $35 an acre. Hurd testifies that plaintiff came to him with the proposition to give $2,800, but says, "I don't know how he worded it."   Hurd continued to occupy and use the land, the entire 80 acres, after the county obtained the legal title, about 1904, the same as before, and continued to do so for 18 or 20 years after the trial of the case of *Carr v. Moore,* 119 Iowa 152.   He was not a party to that action.   Plaintiff claims and testifies that he paid Hurd $35 an acre for the 17 and a fraction acres in controversy, and that he relied on Hurd's statement that he could hold the entire tract, and that the $2,800 was given in part for the claim and right of Hurd to the land in dispute.   Under this claim of right, plaintiff went into possession, March 1, 1899, and ever since has been in the open, notorious, and adverse possession of the land in dispute.   He has farmed and improved it, without objection by anyone, and without interference, until defendants sought to move the fence, soon before this suit was brought.

There may be some other circumstances, but this presents the situation in a general way.   Even though it be conceded that the claim of Hurd and plaintiff to hold the land in controversy, under some supposed riparian right,

was not a valid legal claim, that would stand the test of litigation, still he and his grantor were making the claim, and, so far as appears, in good faith. They used and occupied it adversely for 30 or 40 years. Under our holding in *Goulding v. Shonquist*, 159 Iowa 647, 649, and other cases, we think plaintiff was making the claim as a claim of right, and that there was a sufficient basis upon which to base his claim of adverse possession, after occupancy thereunder for the requisite length of time. His claim was more than that of a mere trespasser. Some of the cases hold that the claim of a parol gift of land is a sufficient claim of right; others, a canceled homestead entry; and so on. Without a review of the cases, see, as bearing on this proposition, the following: *Wilbur v. Cedar Rapids & M. R. Co.*, 116 Iowa 65; *Hanson v. Gallagher*, 154 Iowa 192, 196; *Ratigan v. Ratigan*, 181 Iowa 861.

We are of opinion that the trial court rightly decided the case, and that plaintiff's claim of right has, by adverse possession, ripened into a title which is good, as against the record title of the defendants.—*Affirmed.*

Weaver, C. J., Evans and Salinger, JJ., concur.