CYRUS STEVENS *vs.* JOSEPH R. KING and others.

Kennebec. Opinion May 29, 1884.

*Deeds. Boundaries. Ponds. Mills and mill-dams. R. S., c. 92, § 1.*

The following boundaries were given in a deed : "thence easterly on said line to Wilson pond; thence northerly by the shore of said pond to Hiram Norris' land." *Held*, that the land conveyed extended to low-water mark.

To maintain a complaint for flowage under R. S., c. 92, it must appear that the dam which caused the flowing was erected or maintained on the land of the defendants.

ON REPORT.

Complaint for flowage under R. S., c. 92.

The description in plaintiff's deed of the land flowed was as follows :

"Also one other lot or parcel of land situated in Wayne, and bounded as follows, viz : Beginning on the easterly side of the aforesaid county road, leading from Orren M. Blaisdell's dwell-

ing house to Wayne village, at the northerly corner of my land, on the line between me and Crosby Gordon; thence easterly on said line to Wilson pond; thence northerly by the shore of said pond to Hiram Norris' land; thence westerly on the line between me and said Norris to the aforesaid county road; thence southerly by the east side of said road to the place of beginning; containing sixty acres, more or less, being the same land conveyed to me by Elijah Wood of Winthrop."

Other material facts are stated in the opinion.

By the terms of the report the law court was to determine the boundaries of the complainant's deed upon Wilson's pond, whether at high-water or low-water mark; also to determine if the complainant had made out a *prima facie* case; if so the action was to stand for trial, otherwise nonsuit to be entered.

*J. H. Potter,* for the plaintiff, upon the question as to the boundary of plaintiff's land, cited: *Wood* v. *Kelley,* 30 Maine, 47.

Upon the question as to the defendants' title to the land on which the dam was maintained counsel cited: *Davis* v. *Stevens,* 57 Maine, 593; *Williamson* v. *Carlton,* 51 Maine, 449.

*Bean and Beane,* for the defendants, upon the first question, cited: *Bradley* v. *Rice,* 13 Maine, 198; *Nickerson* v. *Crawford,* 16 Maine, 245; *Lowell* v. *Robinson,* 16 Maine, 357; *Robinson* v. *White,* 42 Maine, 209; *Bradford* v. *Cressey,* 45 Maine, 9.

Upon the second question: *Jones* v. *Skinner,* 61 Maine, 25; *Morton* v. *The Franklin Co.* 62 Maine, 455; *Russell* v. *Turner,* 62 Maine, 496; *Hill* v. *Baker,* 28 Maine, 9; *Moor* v. *Shaw,* 47 Maine, 88; *Turner* v. *Whitehouse,* 68 Maine, 221.

WALTON, J. This is a complaint for flowage, and the first question is whether the plaintiff's deed bounds him on Wilson pond at high or low-water mark. We think it bounds him at low-water mark.

Lands bounded upon rivers above the ebb and flow of the tide generally extend to the middle of the stream. But lands bounded on fresh-water lakes and ponds extend only to low-water mark.

Of course they may be bounded at high-water mark. But, in the absence of a clearly expressed intention to the contrary, the

presumption is that they extend to low-water mark. Such is the settled law of this state.

In *Bradley* v. *Rice*, 13 Maine, 198, the court held that lands bounded on a pond extend only to the margin of the pond, and not to the center of it. But the question was not raised or considered whether the boundary would be at high or low-water mark.

But in *Wood* v. *Kelley*, 30 Maine, 47, this question was considered, and the court held that lands bounded on a fresh-water pond extend to low-water mark.

The language of the plaintiff's deed, after describing the point of beginning, is as follows :

"Thence easterly on said line to Wilson pond ; thence northerly by the shore of said pond to Hiram Norris' land."

The defendants contend that when, as in this deed, land is bounded by the shore of a pond, it extends only to high-water mark.

The answer to this argument is that such is not the necessary result. The shore of a pond, being the space between high and low water, necessarily has two sides, a high water side and a low water side ; and land bounded by the shore may be bounded by the high water side or the low water side. If the side lines of a parcel of land, starting back from the pond, run to the shore, and there stop, and the line between these two points runs along the shore, of course the land will be bounded by the high water side of it. But if the side lines are described as running to the pond, the result will be otherwise. The legal force and effect of such a description are to carry the land to the pond at all stages of the water, which is equivalent to saying that it extends to low water mark ; and if the line between these two points is run along the shore, it must be along the low water side of it ; and the land will be bounded at low-water mark.

And such is the effect of the description in the plaintiff's deed.

The first line is described as starting at a point back from Wilson pond, and thence running to the pond. The *terminus* of the line is not the shore, it is the pond itself ; and the legal effect is to carry the line to the low water side of the shore ; and, as

the next course starts from that point and runs along the shore, it necessarily runs along the low water side of it; and the land is bounded at low water mark.

Another question is whether the plaintiff has made out a *prima facie* case. We think he has not.

A complaint for flowage is a statutory proceeding. It is not authorized by the common law. And, to maintain it, the statutory conditions must be complied with; one of which is that the dam which causes the flowing must have been erected or maintained upon the land of the defendant. The language of the statute is that any man may "upon his own land" erect and maintain, etc. R. S., c. 92, § 1. And it is for such an erection or maintenance only that a complaint for flowage is authorized. In other cases the common-law remedy still exists, and must be resorted to for redress of injuries occasioned by the unlawful flowing of another's land. *Jones* v. *Skinner*, 61 Maine, 25 ; *Crockett* v. *Millett*, 65 Maine, 191 ; *Goodwin* v. *Gibbs*, 70 Maine, 243.

Upon this point the plaintiff's proof fails. He does not show that the dam which flows his land is on the land of the defendants.

He shows a quit-claim deed of a fractional part of the premises from Orcutt (the assignee in bankruptcy of one Stanton) to four of the five defendants ; but he shows no title whatever in the fifth.

This the plaintiff's counsel admits ; and the other deeds put into the case by the plaintiff show that nothing passed by the quit-claim deed, the whole title being at the time of its execution in other parties. But if the quit-claim deed had conveyed to these four defendants all which it purports to convey, it would only make them tenants in common of a fractional portion of the premises, and there would be other joint tenants or tenants in common not joined in the suit ; and this alone is fatal to its maintenance. *Turner* v. *Whitehouse*, 68 Maine, 221 ; *Moor* v. *Shaw*, 47 Maine, 88 ; *Hill* v. *Baker*, 28 Maine, 9.

The result is that under the agreement of the parties stated in the report a nonsuit must be entered.

*Plaintiff nonsuit.*

PETERS, C. J., DANFORTH, LIBBEY and EMERY, JJ., concurred.