GEORGE S. WRIGHT and GEORGE N. MAYNE, Appellants, v. CITY OF COUNCIL BLUFFS.

**Riparian owners: TITLE: BOUNDARY.** The owner of land bordering
1 on a non-navigable body of water, which was meandered by the government surveyors, does not take title to the center of the water.

**Title by accretion: BURDEN OF PROOF.** One asserting title beyond a
2 meander line, on the theory of accretion or reliction, as against a party in possession has the burden of proof.

**Boundaries: MEANDER LINE.** Where there is a body of water proper
3 to be meandered, and the meander line represents the water line, the title of one owning land abutting upon such line extends to the water's edge; but where the body of water was not proper to be meandered, such line constitutes a boundary, and the abutting owner's title is limited thereby.

**Title by accretion:** MEANDERED LAND. The fact that government surveyors in meandering a body of water proper to be meandered did not follow the water line, but included within the lake land not permanently covered with water, did not make such land a part of the lake so as to give owners abutting upon the meander line title thereto by accretion or reliction.

*Appeal from Pottawattamie District Court.*— HON. O. D. WHEELER, Judge.

THURSDAY, JULY 13, 1905.

REHEARING DENIED MARCH 20, 1906.

PLAINTIFFS are the owners of lots 1, 2, and 3 of fractional section 23, township 75, range 44, in Pottawattamie county. According to the government plat these lots abut upon a meandered lake or bayou now known as " Big Lake," the southern end of which is within the northern part of the city limits of Council Bluffs, and these lots together constitute what is spoken of by some of the witnesses as the " Island," although as a matter of fact not surrounded by water. The irregular tract in controversy is between the meander line and the median line of a portion of the territory platted as lake or bayou which is not permanently covered by water. The plaintiffs claim title to this tract as a part of the bed of the lake or bayou included between the meandered lines, and not covered by the descriptions of their lots. Defendant now in possession of this tract by a tenant, denies plaintiffs' title, and also asserts title in itself under an act of Congress passed in 1880 purporting to convey to defendant the title of the United States to the meander lake above referred to upon condition that the premises shall be held for public use, resort, and recreation. On the trial of the issues the court found that plaintiffs had no right, title, or interest in or to the tract in question, and dismissed plaintiffs' petition as without merit or equity, and

rendered judgment against plaintiffs for costs, from which plaintiffs appeal.

*Wright & Baldwin* and *Mayne & Hazelton,* for appellants.

*S. B. Snyder,* City Solicitor, and *Harl & Tinley,* for appellee.

McCLAIN, J.— In their petition plaintiffs assert title to the tract in controversy on the theory that as riparian owners their title extends to the middle of the bed of the

1. RIPARIAN OWNERS: title; boundary.

lake or bayou, which is conceded on both sides to be a nonnavigable body of water. This claim, however, is without legal foundation, for it has been held by this court that the owners of land bounded on nonnavigable lakes have no title to the bed of such lakes covered by water. *Noyes v. Collins,* 92 Iowa, 566; *Noyes v. Harrison County,* 104 Iowa, 174; *Rood v. Wallace,* 109 Iowa, 5. Nor is it claimed that this lake, or rather the portion of it which, as indicated by the government plat, extended over the tract in controversy and other land to a connection with the Missouri river, was ever a nonnavigable stream in such sense that the title of the adjoining owners would extend to the center thereof. That idea is precluded by the fact that the banks were meandered in the original survey, and the rule announced in the foregoing cases as to the title to the beds of nonnavigable lakes in Iowa is applicable, and excludes any ownership by plaintiffs to the tract in question as a part of the bed of the nonnavigable lake.

But the case appears to have been tried in the lower court and is now presented here in behalf of plaintiffs on the

2. TITLE BY ACCRETION: burden of proof.

theory that the tract in question was at the time of the original survey a part of the bed of the lake covered by water, and was subsequently by

gradual recession of the water added to plaintiffs' lots by accretion or reliction, and that theory of the case is therefore properly within our consideration. Inasmuch as defendant is in possession of the tract, and plaintiffs are seeking to have their title to such tract established, the burden is on the plaintiffs to show such accretion or reliction as to extend their title beyond the original meander line over this tract. On a close examination of the record we fail to find such evidence as would warrant us in holding that there had ever been such accretion or reliction as would thus extend plaintiffs' boundary so as to include this tract. The fact that the government surveyors ran meander lines along the two sides of an irregular water course or body of water connecting the lake as it now exists with the Missouri river does not prove that the land included within these meander lines was at the time of the survey a part of the lake in such sense that the doctrine of accretion or reliction is to be applied in determining plaintiffs' boundary.

The meander line is not a boundary line if it substantially represents a water line and the surveyed tracts actually abut upon a body of water proper to be meandered under the rules governing public survey; for in such case the title of the abutting owners extends to 3. BOUNDARIES: meander line. the actual water line, at least as it existed at the time the survey was made. But if there is no body of water proper to be meandered, the meander line limits the title of the owners of the tracts described in the survey by means of such meander lines, and they do not acquire any title to land beyond the meander lines. The running of the meander line does not establish the character of the land outside of such boundary. *Schlosser v. Hemphill,* 118 Iowa, 452; *Grant v. Hemphill,* 92 Iowa, 218; *Carr v. Moore,* 119 Iowa, 152; *Iowa v. Rood,* 187 U. S. 87; *Rood v. Wallace,* 109 Iowa, 5.

The case before us differs from Schlosser v. Hemphill and Carr v. Moore only in this respect; that in those cases

it was found that there was no body of water proper to be
meandered, and there was no occasion for the
application of the doctrine of accretion or relic-
tion, while in this case it appears that there was at the time
of the original survey, and still is, a body of water proper
to be meandered and constituting a lake, but the meander
lines, instead of following the lake, included a large tract
of land, not permanently covered by water, and not properly
included, therefore, within the body of the lake; the tract
of land in controversy being a portion of the tract thus im-
properly included.   This tract may have been temporarily
covered with water at the time of the original survey in such
sense that it was swampy and overflowed, and is still occa-
sionally overflowed in times of flood by water thrown back
from the Missouri river, but there is no sufficient evidence,
in our judgment, that it ever constituted a part of the bed
of the lake.   Now, we think it clear that the mere action of
the government surveyors in running these meander lines
did not make this land a part of the lake bed in such sense
that, since the water covering it temporarily and at infre-
quent intervals has receded, the doctrine of accretion and
reliction should apply, and we reach the conclusion that the
tract of land in question did not pass to the plaintiffs on the
recession from it of water which may have covered it.   With
reference to the land thus temporarily overflowed, the mean-
der line bounding plaintiffs' premises constituted a boundary
line, and plaintiffs must be limited as to their title to the
tracts conveyed to them by the government by the bound-
aries fixed for such tracts.   We do not think this a proper
occasion to go into an elaborate discussion of the question
whether the doctrine of accretion and reliction is applicable
as extending the boundaries of riparian owners along the
shores of an actual lake existing at the time of the original
survey, the waters of which have subsequently receded; for
we reach the conclusion under the evidence that the actual
boundaries of the lake were substantially the same when the

4. TITLE BY
ACCRETION:
meandered
land.

original survey was made as they are now. Big Lake is fed
by springs along its shore, and has never, as we think, cov-
ered the land in controversy, except as the water of the
Missouri river has been thrown back into it in times of
flood. At such times the water covering this tract has been
water thrown back from the river, and not water consti-
tuting substantially a part of the body of the lake. Along
the boundaries of the principal body of the lake the meander
line is inside, rather than beyond, the water line, and there
is no evidence of any such change in conditions as to justify
a belief that the lake, by drying up, has receded from the
land in controversy, and that its substantial boundaries have
been materially changed.

The conclusion above indicated renders it unnecessary
to discuss the effect of the congressional grant of the lake
to the city, or the facts with reference to the assertion of
title over the tract in controversy based on this grant as color
of title for the statutory period of limitation.

The decree of the trial court was, as we think, correct,
and its judgment is *affirmed.*