GLASSCOCK *v.* NATIONAL BOX COMPANY.

Opinion delivered April 29, 1912.

1. NAVIGABLE WATERS—CONVEYANCE OF LAND MEANDERED BY LAKE.—The legal effect of patents of the State conveying lands surrounding a meandered lake is to convey the title to the bed of the lake to the adjoining owners, and the State could not subsequently survey the bed of the lake and convey same to another. (Page 159.)

2. TRESPASS—CUTTING TIMBER—RIGHT TO RECOVER.—In an action of trespass for cutting and removing timber, the plaintiff must recover, if at all, upon the strength of his own title. (Page 161.)

3. APPEAL AND ERROR—FINDING OF COURT—CONCLUSIVENESS.—A fiinding of the court, based upon conflicting evidence, is conclusive upon appeal. (Page 161.)

Appeal from Greene Circuit Court; *Frank Smith,* Judge; affirmed.

STATEMENT BY THE COURT.

This suit was brought by appellants for damages for timber claimed to have been cut and removed from certain lands in township 17, range 7 east, Greene County, 1,560.71 acres of which was situated within the meandered line of Bagwell's Lake, as shown on the map and plats of the General Land Office and the west fractional half of section 4, out of the lake abutting thereon. Appellants claimed a three-tenths interest in the land and timber, and deraigned title as follows:

From the United States to the State of Arkansas by act of Congress, April 29, 1898, known as the Arkansas Compromise, and from the State by deed of the Commissioner of State Lands to the Arkadelphia Lumber Company, a corporation, dated May 1, 1893, and through different conveyances to their ancestor and intestate.

The defendant filed an answer and cross complaint, denying that plaintiffs were the owners of the lands claimed or had any interest therein, except in the west fractional half of section 4 out of the lake; admitted cutting the timber from all the lands described in the complaint, and denied plaintiff's right to or interest in any of the timber cut from the the lands except an undivided three-tenths interest in that cut on the said west fractional half of section 4, and as to that pleaded the three years statute of limitations; denied that under the Arkansas Compromise Act any of the lands claimed inured to plaintiff's benefit, or that they acquired any title thereto by virtue of said compromise act; admitted the attempted conveyance by the State to the Arkadelphia Lumber Company of the lands within the meandered lines of Bagwell's Lake, and that plaintiffs were entitled to the interest claimed thereon if any title was conveyed to the Arkadelphia Lumber Company; alleged that all of said lands described in the complaint were situated within the meandered lines of Bagwell's Lake, a nonnavigable body of water; that all the lands surrounding said lake were surveyed by the United States in 1846, and that said body of water was designated as Bagwell's Lake and defined by meandered lines, as shown by the plat and survey made at that time; that all the lands bordering upon said meandered lines outside of said lake and surrounding the same were swamp and overflowed lands on September 28, 1850; that the title to each tract thereof, without the meanders of Bagwell's Lake and bordering thereon, passed to the State of Arkansas, which conveyed all the right of title and claim to all of the lands bordering upon said lake, without the meandered lines, under certain patents, naming them, of dates the years 1856-59, 60, 76, 81, 75, 72, 87 and 89. That the State parted with all its title by said conveyances to the said several sections of land bordering upon the said lake, and that the bed of the lake, upon which said tracts bordered, to

the center or thread thereof, passed out of the State and to her several respective grantees named in said patents, and are now owned by divers and sundry persons, other than plaintiffs.

That it entered upon the lands and cut the timber therefrom by authority of the owners; alleged a compromise and settlement of the claim for the timber cut, before the death of plaintiffs' ancestors, and pleaded the three years statute of limitations, as to that cut from any lands in which they had interest after his death.

That the timber cut by them from the west fractional quarter of section 4 was cut by mistake, and the total value of it did not exceed $600, which was also included in the settlement and compromise; alleged further the necessity for an accounting, and prayed that the cause be transferred to equity.

It is admitted that H. W. Glasscock, ancestor of plaintiffs, owned the west fractional half of section 4, township 17 north, range 7 east, at the time of his death. The testimony shows that the State by a quitclaim deed of May 1, 1893, conveyed its interest in all the lands described in the complaint, except the west fractional half of section 4, township 17 north, range 7 east, that was shown on the plat of the United States survey on file in the State Land Office, to be within the meandered lines of Bagwell's Lake, containing 1,560.71 acres, the Land Commissioner, making the deed under authority of an act of March 18, 1879, providing for the sale of unapproved and unpatented swamp lands.

Defendant admitted that whatever title was acquired by the Arkadelphia Lumber Company by the said deed passed to and was held by H. W. Glasscock at his death. Plaintiff read in evidence from page 350 of the Arkansas Compromise, May 1, 1893, a memorandum showing said deed from the State Land Commissioner to the 1,560.71 acres situated within the meandered lines of Bagwell's Lake as shown on the plat of the United States survey on file in the land office, describing it as it was described in said deed to the Arkadelphia Lumber Company. This land was also reported as confirmed by the Arkansas Compromise Act of April 29, 1898, the certificate showing that it was all embraced in Arkansas Swamp Land, Special List No. 1, reported to the General Land Office, and

by it approved and by said act of Congress confirmed to the purchasers from the State.

The field notes of the survey made in 1845, showing the meandered lines of Bagwell's Lake, were also introduced in evidence, and there was much testimony as to the character of the land, the kinds and growth of timber thereon, and whether the same was in fact a lake or land at the time of the original survey. Patents for all the lands bordering on the meander lines of said lake were introduced in evidence, and it was shown that the defendant acquired whatever title the State parted with by the execution of said patents. The testimony showed that said land within the meander lines of said lake had not been surveyed by the government, that the State's deed therefor to the Arkadelphia Lumber Company was the first attempt to designate it as sections and parts of sections, and there was no testimony showing whether a survey thereof had ever been made by the State or the government.

The court found "that the lands claimed by the plaintiff except the west fractional half of section 4, township 17 north, range 7 east, out of the lake, were in the year 1846 within the meandered lines of Bagwell's Lake, according to the official plat and field notes of the survey made by the surveyor, and that the defendant has a *prima facie* title to the center of the lake as a riparian owner, and that the evidence of the plaintiff is insufficient to overcome the *prima facie* title of the defendant and those under whom it claimed title, and under whose authority it cut the timber sued for. It further found that a settlement and compromise of the claim had been entered into by which the plaintiffs were bound and precluded from recovering anything from the timber cut prior thereto; that there was cut in the said west fractional half of section 4 certain timber for which defendant should be required to pay, but the amount was not definitely shown, and the court fixed the value at $100, and rendered judgment for plaintiff for three-tenths of said sum. They excepted to the finding and declaration of the court, and from the judgment appealed.

*Johnson & Burr,* for appellants.

1. The title to the lands in Bagwell's Lake was confirmed to the Arkadelphia Lumber Company by the Arkansas Com-

promise Act confirming the purchase from the State. U. S. Stat. 368, § 3, approved April 29, 1898. The confirmation is a conveyance—a higher evidence of title than a patent from the United States. 95 U. S. 551; 2 How. 319. By the confirmation appellants acquired an indefeasible title to the 1,560.71 acres of land within the meanders of the lake, and no title passed by virtue of riparian rights. The meandered area was in fact land and not lakebed. It was swamp and overflowed land. 92 Ark. 30; 121 S. W. 1066; 138 U. S. 573; 24 Ark. 431.

2. Plaintiffs are not barred by the Collier Compromise from claiming damages for timber cut prior to September 18, 1905. The attorneys could not bind appellant without special authority. Denman has no authority to act for appellants, and it was not within the scope of his authority to compromise or release from liability, or to shift the liability by a new contract with another to assume it. 32 Ark. 346; 56 *Id.* 375; 93 *Id.* 342; 127 S. W. 516. The contract was void and no bar.

3. The damages awarded exceed the amount claimed in the complaint.

4. There is no magic in a meandered line. It is only an irregular line which bounds a body of land beyond which lies land, water, forest or prairie. 139 S. W. 625. The disputed area was land. 88 Ark. 37; 139 S. W. 625. Arkansas Swamp Land List No. 1 shows this to be swamp and overflowed land. 92 Ark. 30. This overthrows all claims by virtue of riparian rights. 77 Ark. 338.

5. An administrator can not compromise claims. Kirby's Dig., §§ 85 *et seq.*; 11 A. & E. Enc. Law (2 ed.) 1000; 51 Ark. 388; 27 *Id.* 235.

*J. C. Hawthorne, M. P. Huddleston* and *Block & Kirsch,* for appellee.

1. When the government, either State or National, makes a grant of land, the grantee takes all the land embraced within the language of the grant, and nothing further remains in the government to be conveyed. 31 N. W. 209; 47 *Id.* 425; 46 *Id.* 790. After the grant there was nothing left to be affected by the compromise. 38 N. E. 214; 40 *Id.* 690.

2. The field notes of the survey alone make a *prima facie* title in defendant. 39 Fed. 66. The testimony shows

the timber grew in the water, the bed of a meandered lake, and defendant owned to the center of the lake by riparian rights. 92 Ark. 39; 88 Ark. 37; 77 *Id.* 338; 43 N. W. 865.

3. An administrator has authority to compromise the claim. Kirby's Dig., §§ 79, 186; 42 Ark. 25; 18 Cyc. 878; 49 Ark. 236; 93 *Id.* 253.

KIRBY, J., (after stating the facts).    It is attempted to be shown that Bagwell's Lake, at the time of the government's survey thereof and the designation of it upon the plats and maps of the General Land Office, was not in fact a lake but only swamp and overflowed lands, and the preponderance of the testimony appears to be in favor of this position, but the question was tried before the court sitting as a jury, and it has found otherwise upon testimony sufficient to sustain the judgment.    It is not questioned that the government had patented to the State all the lands surrounding said lake and abutting thereupon, as shown by its plats and surveys as swamp and overflowed lands, selected by the State under the grant of 1850, and that the State had in turn conveyed its interest in all of said lands patented to it by the same description to its grantees, and that appellee has succeeded to this title.    It is further undisputed that the State by the Land Commissioner's quitclaim deed of May 1, 1893, attempted to convey the 1,560.71 acres of land shown on the government's map and plat of its survey of lands on file in the State Land Office  to be unsurveyed and within the meandered line of Bagwell's Lake, by the description shown in the deed and alleged in the complaint, and that plaintiffs succeeded to three-tenths of whatever interest was conveyed in said lands to the Arkadelphia Lumber Company by said deed from the State. It is claimed that this conveyance of these lands by the State and the approval and confirmation of the grant thereof by the Congress of the United States in ·the act of 1898, the Arkansas Compromise, amounted to a  correction in the survey, and passed the title to all of said lands to the State's said grantee.

Upon the other hand, it is contended by the appellee that the government having, in the first instance, made the survey, dividing and sectionizing all the lands surrounding the lake and showing them to border upon the meandered line

thereof, and having granted and patented said lands to the State by the description and in accordance with the maps and plats of the survey, and the State having by patents with like descriptions parted with its title to its grantees, the grantees of the lands surrounding the lake, as shown thereby, by riparian right became the owners of the bed of the lake, and that the government and the State were thereafter without right to dispose of it by patent or otherwise.

In *Little* v. *Williams*, 88 Ark. 37, this court said: "The legal effect of the patents to the State of the fractional sections and parts of sections surrounding the meandered lines of the lake, according to the official plats of the public survey, was to convey all riparian rights and by virtue thereof to vest *prima facie* title to the bed of the lake, as shown on the plats from meander shore lines to center. The conveyance executed by the State in turn to its grantees had the same effect. *Hardin* v. *Jordan*, 140 U. S. 371; *Mitchell* v. *Smale*, 140 U. S. 406." See *Johnson* v. *Elder*, 92 Ark. 39.

In *Hardin* v. *Jordan, supra*, the United States Supreme Court said: "It has never been held that the lands under water in front of such grants are reserved to the United States, or that they can be afterwards granted out to other persons to the injury of the original grantees. The attempt to make such grants is calculated to render the title uncertain and to derogate from the value of natural boundaries, like streams and bodies of water."

In *Mitchell* v. *Smale* that court said: "We think it a great hardship, and one not to be endured, for the government officers to make new surveys and grants of the beds of such lakes, after selling and granting the lands bordering thereon, or represented so to be. It is nothing more nor less than the taking from the first grantee a most valuable and often the most valuable part of his grant."

Thus it will be seen that that court has also held that the title to the bed of lakes of this kind passed because of the riparian rights to the adjoining owners where the lake was not surveyed as land nor described on the plat as land, but as lake.

It has already been determined that an individual can not question the correctness of a survey made by the govern-

ment, nor acquire and assert rights in unsurveyed lands which the government has never asserted against the riparian rights of the adjoining owners. If the government had attempted to correct the survey, and had sectionized all the land situated within the meandered line of Bagwell's Lake, and thereafter conveyed same, by patent or otherwise, to other grantees, it would not have had effect to deprive the original grantees of their riparian right to the bed of the lake upon which their lands bordered, if it was in fact a lake at the time of the first survey thereof. The court, in this case, having found that the lands claimed by appellants within the meandered lines of Bagwell's Lake, as shown at the time of the original survey, were in fact under the waters of the lake at that time, they passed then by the government's first patents to the State, the owner of the land surrounding and bordering upon the lake by riparian right, and by the State's patent likewise to its grantees. The State, having thus parted with all its right and title to the lands in the bed of said lake attempted to be conveyed to the Arkadelphia Lumber Company by its Land Commissioner's deed, had no title at that time, and could convey none, and the selection of said lands as described in that deed and the report to the General Land Office and approval thereby of the selection and the confirmation of the title to the State's grantees to said lands by the said act of Congress, could have no effect to vest any title in said grantee, the government and the State, each and both, having already before then parted with all title and right to said lands as above stated.

It follows that appellants were without title to all of the lands claimed at the bringing of this suit, except the west fractional half of section 4 not in the lake; and, since they must recover, if at all, upon the strength of their own title, they are without right to do so, except as to the timber cut from said fractional section 4. As to that, the evidence was contradictory, and, the court having found the value in their favor to be but $30, its finding is conclusive here, and the judgment will be affirmed.

It is so ordered.