. RICHARDSON ET AL *v.* SIMS ET AL.

[80 South. 4, Division A.]

1. WATER AND WATER COURSES. *Title of riparian proprietor. Non-navigable lakes.*

   The riparian owner of a non-navigable lake takes title to the middle or center of the lake ratably with other riparian owners, if there be any.

2. SAME.

   With reference to the acquisition of title to the bed of the lake by virtue of riparian ownership where such ownership consists of a mere rim of the lake whenever it clearly appears to the court that to enforce the general rule would perpetrate a manifest injustice to the grantor, an exception to the general rule may be made.

3. WATERS AND WATER COURSES. *Non-navigable lakes. Riparian proprietor. Meander line.*

   The title of a riparian owner on a non-navigable lake does not merely extend to the water's edge where the lake bounding on the government's plat is shown to have been meandered; the meander lines having been run to ascertain the exact quantity of upland land to be charged for by the government in granting riparian land and not for the purpose of limiting the title of the grantee by it.

4. SAME.

   Such government grants of the upland do not limit the title to the water's edge, nor are the abutting waters deemed part of the public domain, separate and distinct from the shore land conveyed according to the official plat.

5. WATERS AND WATER COURSES. *Non-navigable lakes. Riparian ownership.*

   The same rule as to riparian ownership on non-navigable streams applies to shore owners on non-navigable lakes.

6. SAME.

   Non-navigable lakes are subject to private ownership and title to the bed goes with the shore ownership as appurtenant thereto.

7. NAVIGABLE WATERS. *Title of riparian owner.*

   The riparian owner takes to the center of the thread of navigable streams, subject to the public right of use, and navigation; tide-

water, navigable streams and lakes belonging to the public for purposes of commerce, fisheries and other uses.

8. COMMON LAW. *English decisions. Application.*
    A rule announced by the common law of England, though by decision since the Revolutionary War may well be taken by our courts at least as a friendly guidepost.

APPEAL from the chancery court of Coahoma county. HON. JOE MAY, Chancellor.

Suit by P. S. Richardson and others against F. R. Sims and others. From a decree dismissing the bill, complainants appeal.

The facts are fully stated in the opinion of the court.

*Watkins & Watkins* and *Brewer, Brewer & Brewer,* for appellants.

*Maynard & Fitzgerald, D. A. Scott, E. M. Yerger* and *Calvin Perkins,* for appellees.

HOLDEN, J., delivered the opinion of the court.

This suit involves the title to the bed of Swan Lake, a shallow non-navigable lake about five miles long and five hundred yards wide, situated in township 28, range 3 west in the northeastern part of Coahoma county, extending through and including portions of several sections of land.

The United States government owned, surveyed, and platted said township 28 in 1842, and meandered the boundary line of Swan Lake. All of the sections of land of which the bed of the lake constituted a part were divided into lots, each being numbered, and a township plat was made of the land by the government, and on this plat the lots were designated by their respective numbers, together with figures showing the number of acres of land in each lot. The subsequent grants of these lots were made according to said plat.

These lots bordering on Swan Lake are owned by the appellees who acquired title by grant from the government before the year 1850, the year in which the Swamp Land Act was passed by Congress. Act Sept. 28, 1850, chapter 84, 9 Stat. 519. The appellees, as owners of the lots adjoining and bordering Swan Lake, claim title to the bed to the center or middle of the lake by virtue of their riparian ownership. The appellants, who were complainants below, filed their bill to quiet title in them to the bed of Swan Lake, they claiming ownership, as tenants in common, by purchase from the state of Mississippi in 1913, the state having acquired title from the United States government under the Swamp Land Act of Congress of 1850. Defendants below, appellees here, contend that the title to the bed of the lake had vested in appellees as riparian owners prior to the passage of the Swamp Land Act, and therefore appellants acquired no title through the state of Mississippi, since the state obtained none from the United States government under the Swamp Land Act, as the government had parted with title to appellees as riparian proprietors before the passage of the act. From a decree dismissing the complainants' bill this appeal is prosecuted here.

The decisive question in the case is whether the owners of the lots bordering on the lake take title to the bed of the lake, to the center or middle thereof, by virtue of their riparian ownership, or take only to the water's edge.

The precise question has never been passed on by this court, and is therefore one of first impression here; but it has been settled in many states by statute and judicial decisions both state and federal. It is uniformly declared to be a question of local law to be finally determined by statute or decisions of the highest state court in each state. The courts in many of our sister states hold to the view that the title of the ripari-

an owner on nonnavigable lakes extends only to the water's edge, while in nearly an equal number of states the rule is settled that the riparian proprietor takes title to the middle of the lake.

We have carefully reviewed these numerous authorities, and have considered the reasoning advanced in support of the respective contrary views therein; and it is not without some difficulty that we have reached and adopted the conclusion that the better rule is that the riparian owner on a nonnavigable lake takes title to the middle or center of the lake ratably with other riparian owners, if there be any.

This view is undoubtedly in line with the common law of England with reference to both nonnavigable lakes and fresh-water streams. This court has followed the common-law rule and held repeatedly that the boundary of riparian lands is the thread of the center of the stream. *Magnolia* v. *Marshall,* 39 Miss. 109.

The question, then, is presented: Why should not the same rule applicable to running streams in this state be applied to nonnavigable lakes? The reasons given by some courts for departing from the common law, and holding the rule should not apply alike to streams and nonnavigable lakes, are fully set forth in the following cases: *State of Indiana* v. *Milk* (C. C.), 11 Biss. 197, 11 Fed. 389; *Hardin* v. *Jordan,* 140 U. S. 371, 11 Sup. Ct. 808, 838, 35 L. Ed. 428; *Fuller* v. *Shedd,* 161 Ill. 462, 44 N. E. 286, 33 L. R. A. 146, 52 Am. St. Rep. 380; *Hardin* v. *Shedd,* 190 U. S. 508, 23 Sup. Ct. 685, 47 L. Ed. 1156; *Trustees of School* v. *Schroll,* 120 Ill. 509, 12 N. E. 243, 60 Am. Rep. 575; *Seaman* v. *Smith,* 24 Ill. 521; *Hammond* v. *Shepard,* 186 Ill. 235, 57 N. E. 867, 78 Am. St. Rep. 274; *Schulte* v. *Warren,* 218 Ill. 108, 75 N. E. 783, 13 L. R. A. (N. S.) 745; *Noyes* v. *Collins,* 92 Iowa, 566, 61 N. W. 250, 26 L. R. A. 609, 54 Am. St. Rep. 571; *Carr* v. *Moore,* 119 Iowa, 152, 93 N. W. 52, 97 Am. St. Rep. 292; *Wright* v. *City of Council Bluffs,*

130 Iowa, 274, 104 N. W. 492, 114 Am. St. Rep. 412; *Marshall Dental Mfg. Co.* v. *Iowa,* 226 U. S. 460, 33 Sup. Ct. 168, 57 L. Ed. 300; *Diedrich* v. *Northwestern Union Ry. Co.*, 42 Wis. 248, 24 Am. Rep. 399; *Ne-pee-nauk Club* v. *Wilson,* 96 Wis. 290, 71 N. W. 661; *Bradley* v. *Rice,* 13 Me. 201; *Stevens* v. *King,* 76 Me. 197, 49 Am. Rep. 609; *State* v. *Gilmanton,* 9 N. H. 461; *Fletcher* v. *Phelps,* 28 Vt. 257; *Kanouse* v. *Stockbower,* 48 N. J. Eq. 42, 21 Atl. 197; *Stoner* v. *Rice,* 121 Ind. 51, 22 N. E. 968, 6 L. R. A. 387; *Boardman* v. *Scott,* 102 Ga. 404, 30 S. E. 982, 51 L. R. A. 178.

The principal arguments made in support of the soundness of the rule that the riparian owner takes only to the water's edge are that the practical difficulties encountered are such that, where the lake is circular, round, or square in shape, it would hardly be possible to run the boundary line beyond the water's edge so as to define with certainty the respective rights of the shore owners in the bed of the lake; and also that it would be an unfair and unjust rule to allow a riparian owner to take title to the bed of a lake containing many thousands of acres of land solely on account of his shore ownership consisting of but a few acres bordering on and constituting the mere rim of the lake. It is also contended that where the land granted appears by the plat to have been surveyed to the boundary of the lake, which was meandered and so designated on the plat, the title to the land is limited to the border of the lake.

We are not called upon in this case to lay down a rule or prescribe a method by which riparian owners may determine their respective rights in the bed of a lake, such apportionment of the bed not being involved here, and we decline to pass upon the question until it arises in this court; but we may point out that the difficulties apprehended might be overcome by some just and equitable division of the lake bed by a pro-

ceeding in the proper court, in cases where a division otherwise is considered impracticable. A plausible solution of this supposed difficulty in an extreme case may be found in the case of *Scheifert et al.* v. *Briegal et al.*, 90 Minn., 125, 96 N. W. 44, 63 L. R. A. 296, 101 Am. St. Rep. 399; also, see 4 R. C. L. 93. The same trouble in defining the respective rights of riparian owners on a circular or square lake may be found in cases where riparian owners border on a stream that is circular in shape on account of deep bends in its border, yet it will not be contended that the rule here announced by us does not apply in such cases.

With reference to the acquisition of title to the bed of the lake by virtue of riparian ownership where such ownership consists of a mere rim of the lake, we deem it sufficient to say that whenever such an unusual case arises and it should clearly appear to the court that to enforce the general rule announced would be to perpetrate a manifest injustice to the grantor, an exception to the general rule might possibly be made in such exceedingly rare case. However, we are not dealing with that kind of case now, and we have only announced the general rule in dealing with the particular property right now before us.

The contention that the title of the riparian owner extends only to the water's edge where the lake boundary on the plat is shown to have been meandered, we think, is unsound for the reason that the meander lines are run along the margin of the water for the purpose of ascertaining the exact quantity of the upland to be charged for by the grantor. Such survey defines the waves or bends of the banks of the stream or lake and is the means of determining the quantity of upland to be conveyed to the purchaser, and such meandering of the water line is not for the purpose of limiting the title of the grantee by it. Such government grants of the upland do not limit the title to the

water's edge, nor are the abutting waters deemed part of the public domain, separate and distinct from the shore land conveyed according to the official plat.

We can see no good reason why the same rule as to riparian ownership or nonnavigable should apply to shore owners on nonnavigable lakes. That nonnavigable lakes are subject to private ownership seems to be settled by abundant authority, and title to the bed goes with the shore ownership as appurtenant thereto. The water front is an advantageous adjunct so incidental to the use of the main property as to become part and parcel of it. Indeed, there is authority for the proposition that it is an inseparable right annexed to the soil of the upland. Its advantages are obvious in the enjoyment of the bordering land. The shore owner is entitled to the use of his water front as an incident to the fee in the shore land on nonnavigable, no-tide, streams, lakes or ponds; and in this state the riparian owner even takes to the center of the thread of navigable streams, subject to the public right of use and navigation. Tidewater and navigable streams and lakes belong to the public for the purposes of commerce, fisheries, and such other uses as are common to this character of public waters.

We consider the case of *Hardin* v. *Jordan,* 140 U. S. 371, 11 Sup. Ct. 808, 838, 35 L. Ed. 428, the leading and best-considered case on the subject that we have been able to review. The question is so ably discussed therein that we hesitate to do more than merely cite the case for careful perusal. However, it is pertinent to say that this case follows the common law of England and lays down a rule that we consider sound and reasonably safe to follow. The soundness of the decision has been questioned and attacked by many of the learned state courts of those states where the contrary view has been held; but we think these criticisms have cost considerable mental energy, and

have failed to shake the firm foundation upon which rest the views therein expressed. The rule announced in *Hardin* v. *Jordan, supra,* is supported by decisions and text law in England written by able jurists, and while we understand that such authority is not absolutely controlling in this case, nor was it necessarily controlling with the court in *Hardin* v. *Jordan,* yet the rule announced by the common law of England, even though decided since the Revolutionary War, may be taken by us as at least "a friendly guidepost, our wandering steps to guide;" and when the view is further strengthened and the pathway clearly illuminated in *Hardin* v. *Jordan,* which also need not be controlling here, we do not hesitate to follow the rule as announced by these able authorities.

The correctness of the rule announced here is also sustained by numerous decisions of the state courts. The leading ones we here cite: 4 R. C. L. 93; *Lamprey* v. *Mead,* 54 Minn. 290, 55 N. W. 1132, 40 Am. St. Rep. 328; *Railroad Co.* v. *Ramsey,* 53 Ark. 314, 13 S. W. 931, 8 L. R. A. 559, 22 Am. St. Rep. 195; *Chapman & Dewey Land Co.* v. *Bigelow,* 77 Ark. 338, 92 S. W. 534; *Rhodes* v. *Cissel,* 82 Ark. 367, 101 S. W. 758; *Glascock* v. *National Box Co.,* 104 Ark. 154, 148 S. W. 248; *Harrison* v. *Fife,* 148 Fed. 781, 783, 78 C. C. A. 447; *Mary E. Calkins, Adm'x,* v. *Jas. M. Hart,* 219 N. Y. 145, 113 N. E. 785, L. R. A. (N. S.) 1917B, 783; *Providence Forge Fishing & Hunting Club* v. *Miller Mfg. Co.,* 117 Va. 129 83, S. E. 1047; *Rice* v. *Ruddiman,* 10 Mich. 125; *Clute* v. *Fisher,* 65 Mich. 48, 31 N. W. 614; *Ridgway* v. *Ludlow,* 58 Ind. 248; *Lembeck* v. *Nye,* 47 Ohio St. 336, 24 N. E. 686, 8 L. R. A. 578, 21 Am. St. Rep. 828; *Gouverneur* v. *National Ice Co.* 134 N. Y. 355, 31 N. E. 865, 18 L. R. A. 695, 30 Am. St. Rep. 669, and footnotes; *Lamprey* v. *State,* 52 Minn. 181, 53 N. W. 1139, 11 L. R. A. 670, 38 Am. St. Rep. 541, and authorities cited; *Cobb* v. *Davenport,* 32 N. J. Law, 369; *Palmer*

*Co., Inc.,* v. *Wilkinson,* 141 La. 874, 75 So. 806; Ann. Cas. 1916D, 299.

The question of the appellants' title to the bed of the lake, or whether or not Swan Lake, or any other natural lake or pond, is considered "swamp or overflowed land" within the meaning of the Swamp Land Act, is not passed upon by us, because it is unnecessary to do so in view of the above conclusions.

The decree of the lower court is affirmed.

*Affirmed.*