GRAY v. MALONE.

Opinion delivered March 15, 1920.

1. INJUNCTION—TRESPASSES—REMEDY AT LAW.—A suit in equity will not lie to restrain a party from removing timber from the plaintiff's land, in the absence of an allegation that defendant was insolvent.

2. EQUITY—DEFECTIVE COMPLAINT—WHEN CURED BY ANSWER.—In a suit to restrain defendant from trespassing on plaintiff's timber lands failure of the complaint to allege that the defendant was insolvent was cured when the answer denied defendant's insolvency.

3. TRIAL—MOTION TO TRANSFER—WHEN TOO LATE.—After defendant had waived objection to the jurisdiction of the chancery court, and submitted the cause and it had gone to final hearing, it was too late for defendant to move to transfer the cause to the law court.

4. CONTINUANCE—DILIGENCE.—In a suit to enjoin trespasses on plaintiff's land, defendant's motion for continuance in order that he might have an additional survey of the land by a competent surveyor was properly denied where there was no showing of diligence in not procuring such survey.

5. INJUNCTION—TRESPASSES—BURDEN TO PROVE TITLE.—In a suit to enjoin trespasses on land, the burden of proof was on plaintiff to show that he was the owner and entitled to possession thereof.

6. APPEAL AND ERROR—CONCLUSIVENESS OF CHANCELLOR'S FINDINGS.
—Where the Supreme Court can not determine from the testimony where the preponderance of the evidence lies, it will treat·
the chancellor's finding of facts as conclusive.

7. NAVIGABLE WATERS—ACCRETIONS.—Kirby's Digest, section 4918,
relating to title to land formed in navigable waters within the
original boundaries of a former owner of land on the stream,
has no application to land not formed on an island in a river but
built up as an accretion to plaintiff's original tracts.

Appeal from Perry Chancery Court; *Jordan Sellers*, Chancellor; affirmed.

*Frauenthal & Johnson*, for appellant.

1. Under the allegations of the complaint the court had no jurisdiction. It should have been brought at law in the circuit court. Injunction will not lie to prevent even a trespasser from cutting timber where the complaint does not state facts sufficient to show an irreparable injury to the freehold itself and defendant's insolvency. 67 Ark. 413; 75 *Id.* 286; 77 *Id.* 527; 81 *Id.* 115; 92 *Id.* 118. Chancery had no jurisdiction and appellant was entitled to a jury trial. Defendant was in possession, and a suit at law was necessary. Kirby's Digest, § 6518; 30 Ark. 579; 56 *Id.* 391; 65 *Id.* 503; 74 *Id.* 81. It was error to refuse to transfer the case to the law court.

2. It was error to refuse the continuance. 21 Ark. 460; 85 *Id.* 334; 99 *Id.* 394.

3. Under the testimony appellee was not entitled to recover. Appellant was in possession of the land as a home, and appellee must recover on the strength of his own title, and if an absolutely good title in himself is not shown, then possession by defendant is sufficient to defeat recovery. 104 Ark. 154; 135 *Id.* 353.

4. The testimony shows that the land is the property of appellant, and that both title and possession are in him. The land formed and involved here is located within the original boundaries of the Jesse Gray tract and became vested in appellant and his sisters. Kirby's Digest, § 4918; 6 L. R. A. (N. S.) 162 and note.

5. The great preponderance of the evidence shows that an island was formed in the Arkansas River opposite the land and that accretions have formed to the island extending to the shore and that John Gray was in possession of the land, that it was washed away and in time made back within the original boundaries. Authorities *supra*. The washing away was by avulsion, and the channel of the river was changed so as to run through the Jesse Gray land. It was incumbent on appellee to show by clear testimony that the accretions began from his land and not from other point so as to reach his land. 76 Ark. 538.

The chancellor erred in finding that the lands involved were accretions to the Malone land and that there was no island formed in the river, and these findings are contrary to the great preponderance of the evidence. Lands submerged by overflow and afterward reappearing belong to the original owner. 53 Am. Rep 206; 3 Farnham on Waters, § 448; 6 L. R. A. (N. S.) 162.

*Reid, Burrow & McDonnell* and *Calvin Sellers*, for appellee.

1. The chancery court had jurisdiction. 78 Ark. 408; 84 *Id.* 140; 92 *Id.* 15; 99 *Id.* 438; 105 *Id.* 558; 114 *Id.* 206; 15 *Id.* 307; 14 *Id.* 55, 354. Grounds of equitable relief were alleged in the complaint. The motion to transfer was properly overruled. Kirby & Castle's Digest, § 7432; 74 Ark. 81.

2. The continuance was properly refused. Kirby & Castle's Digest, § 7613.

3. The evidence sustains the findings of the chancellor. 66 Ark. 367; 99 *Id.* 128; 112 *Id.* 607; 113 *Id.* 19. The testimony shows that the accretion was not within the original boundaries of Gray or his father.

WOOD, J. This is an appeal from the chancery court of Perry County. The action was instituted by the appellee against the appellant.

The appellee alleges that he is the owner of certain lands in sections 13 and 18 in Perry County, Arkansas; that the appellant without right had entered upon the lands and is removing valuable timber therefrom, and unless restrained would cause damage to the appellee for which he had no adequate remedy. Appellee prayed for a temporary restraining order and upon the final hearing for perpetual injunction restraining appellant from cutting and removing timber from the lands.

Appellant answered and alleged that he was without knowledge as to whether the appellee was the owner and in possession of the lands specifically described in the appellee's complaint. Appellant denied that he was in possession, and that he was cutting and removing the timber without right, and denied that appellee had no adequate remedy at law, and that he (appellant) was insolvent. He alleged that his father, Jesse Gray, was the owner of certain lands which he described situated in section 7, township 5 north, range 15 west; that at the death of their father, appellant and four other children inherited the lands. He alleged that the lands were situated on the Arkansas River; that during the lifetime of his father all of the lands were washed away; that an island was formed within the original boundaries of the lands and thereafter continued to enlarge by accretion until it covered all and beyond the lands of the original survey of the lands owned by his father; that, by reason of the avulsion of the original lands and the subsequent formation of the island and the accretions thereto, the appellant and the other heirs at law of Jesse Gray became the owners of the lands described in his answer and which appellant was then in possession of for himself and as the agent of the other heirs. The answer was signed by G. F. Clerget, Edward Gordon, Strait & Strait, "attorneys for defendant."

After the issue thus joined, the attorneys for appellee and W. P. Strait, one of the attorneys for the appellant, entered into a stipulation whereby they agreed that "all questions as to the jurisdiction of the court in this

case are waived." This stipulation was filed in 1917. After the depositions were taken the cause proceeded to a hearing and final decree was rendered on May 15, 1919. The decree recites that the cause was submitted upon the complaint, answer, demurrer and deposition of witnesses and also upon the stipulation of counsel that this cause might be tried in chancery.

The decree, however, as it appears from the recitals thereof, was not finally entered of record until June 24, 1919, when on that day the same was entered *nunc pro tunc* as of May 15, 1919.

The record shows that on May 30, 1919, W. P. Strait withdrew as counsel for the defendant. On May 20, 1919, it appears that the appellant through his counsel filed a motion to transfer the cause. That motion was responded to, and the affidavit of appellant was taken in support thereof in which he denied that he ever gave any authority to any of his attorneys, and particularly W. P. Strait, to enter into or make any agreement or stipulation that all questions as to the jurisdiction of the court were waived.

The order of the court overruling the motion to transfer recites, among other things, that "the court doth find that W. P. Strait being the duly authorized leading counsel in this cause for the defendant, together with attorney for plaintiff, heretofore executed and filed a stipulation herein that this cause might be tried in this court, and that in case a finding was made for the defendant that jurisdiction might be retained for the purpose of settling the boundaries of the respective parties; that, in pursuance of said agreement, at great expense, depositions were taken and this cause by consent of all parties submitted to this court December 17, 1918, and at the request of all parties by the court taken under advisement, decree to be rendered in vacation at Morrilton; that, thereafter, towit, on May 15, 1919, the court rendered a final decree for plaintiff without objection having previously been made by defendant to the jurisdiction of the court."

While the cause was pending, the appellee filed a petition in which he alleged that since the institution of the suit and up to the time of filing the petition appellant had been and was at the time endeavoring to cause discontent among the tenants of appellee for the purpose of having the tenants quit possession of certain lands in order that appellant might secure possession thereof; that he was attempting to collect rent from appellee's tenants, although such tenants were cultivating lands which at the commencement of the suit were entirely in the possession of the appellee and under his control. This petition alleged the insolvency of the appellant, and further alleged irreparable injury unless the restraining order should be issued.

The court granted the prayer of the petition for the restraining order.

*First.* The first contention of appellant is that the chancery court was without jurisdiction. This contention cannot be sustained for several reasons. True, the original complaint was defective and did not state facts sufficient to give the chancery court jurisdiction, because it failed to allege that the appellant was insolvent, and therefore failed to allege facts showing that the appellee had no adequate remedy at law for the trespasses of appellant of which the appellee complained. *Burnside* v. *Union Saw Mill Co.*, 42 Ark. 118, and cases there cited. But the chancery court had jurisdiction of the parties, and it had jurisdiction of the subject-matter of restraining trespasses on the lands of appellee if the pleadings raised the issue that the trespasser was insolvent. The pleadings did raise that issue.

The defect in the complaint was cured or removed by the allegations of the answer in which the appellant denied that he was insolvent. In *Choctaw, Okla. & Gulf Ry. Co.* v. *Doughty*, 77 Ark. 1-7, we said: "A defect in pleading is aided if the adverse party plead over to or answer the defective pleading in such a manner that an omission or informality therein is expressly or impliedly supplied, or rendered formal or intelligible."

Again the omission of the complaint to allege that appellant was insolvent was supplied by the allegation to this effect in the petition which the appellee filed asking that the appellant be restrained from "interfering with the possession of appellee or his tenants in any of the lands described in the original complaint or any accretions thereto except such lands as were actually in the possession of the defendant (appellant) at the institution of this suit. This petition was but supplementary to the original complaint which contained a prayer for a restraining order.

Furthermore, the court correctly ruled that the motion to transfer to the law court was too late, coming as it did after appellant, through his counsel, had waived objections to the jurisdiction of the chancery court, and had by consent submitted the cause for hearing before that court, and after a final rendition of the decree in that cause. *Collins* v. *Paepke-Leicht Lbr. Co.*, 74 Ark. 81. The court having jurisdiction of the parties and the subject-matter, it was within the power of the appellant through his counsel to waive omission of the complaint to allege the insolvency of the appellant.

*Second.* After the court refused to transfer the cause to the circuit court, the appellant filed a motion to continue on the ground that the testimony and maps of the two surveyors, one of whom was a witness for the appellant and the other for the appellee, differed as to the exact location of the land of which appellant was in possession.

Appellant set up in his motion that he desired to have a further survey made by a competent surveyor, and that he had been unable to do so because the land had been covered with water; that he desired to have this survey in order to show more clearly if possible that the land in controversy was situated in section 7, and that he also desired to more fully develop the testimony by showing the value and amount of improvements which he had made upon the land and the amount of taxes which he had paid.

It appears that appellant took the deposition of witness H. L. Wright, a surveyor, November 10, 1916, who previously had made a survey of the land at the instance of appellant. The deposition of E. A. Woolverton was taken on September 19, 1917. He had previously made a survey of the lands at the instance of the appellee. Plats which these witnesses had made respectively were filed with their depositions. These plats, therefore, were of record in the cause more than a year before its submission, and were, therefore, subject to the inspection of appellant and his counsel. Appellant fails to show any diligence whatever to procure the survey which he claims might more clearly elucidate the situation of the lands and throw additional light on the subject-matter of the controversy.

Appellant did not in his motion set up or show that the previous surveys were made by persons unskilled in the art of surveying and therefore incompetent. He did not allege that the additional survey would be made by one more competent and skilled than the surveyors who had already testified. The court might have concluded, for aught that appears in the record to the contrary, that a new survey, instead of throwing light upon the issue, would render confusion more confounded.

The only excuse appellant gives for not having made the desired survey earlier was that the lands during the winter and spring months were inundated, rendering the survey impossible. But the summer and fall seasons had intervened at the time of the taking of the depositions concerning the previous surveys and the time when appellant asked for the continuance.

*Third.* Learned counsel for appellant contends in the last place that the testimony is not sufficient to entitle the appellee to recover. The issue was narrowed in the pleadings and proof to the question of whether or not appellant or appellee was the owner of the particular lands which were occupied by the appellant.

The burden of proof is upon the appellee to show that he is the owner and entitled to the possession of the lands

in controversy. He must recover, if at all, upon the strength of his own title, and not upon the weakness of the title of the appellant. *Glasscock* v. *Nat. Box Co.,* 104 Ark. 154; *Wallace* v. *Hill,* 135 Ark. 353.

The testimony shows that appellee and one Jones obtained a deed to the land in controversy from L. E. Hill, November 9, 1901, and that Jones executed a deed to the appellee for his interest in March, 1909. Appellee testified that at the time he and Jones purchased the lands from Hill the lands including the accretions were inclosed by a fence. He says: "The farm part of it was fenced in separate from the other but the whole tract was under fence." Later he acquired the entire interest from Jones, and since 1901 no one had owned any interest in it except himself and Jones. In 1905 he cleared about seven acres of the land that appellant claims. It was cultivated by tenants. He was asked if he had exercised any acts of ownership on any other portion except the part that was cleared, and he answered that he had by keeping it inclosed and using it as a pasture for stock. He was asked if he rented it out at various times and he answered in the affirmative. He was further asked if he and Jones together, since their purchase in 1901, claimed to own all the accretions, and if they had held it openly and adversely since the purchase of the land from Hill. He answered in the affirmative.

Appellee testified that prior to the time that appellant entered upon it he had a suit with one Mobbs in regard to it, which was disposed of in the Supreme Court some time in 1911. The controversy between himself and Mobbs arose over the division of the accretion in front of the two tracts of land, but his right to a portion of the accretion was not in controversy. Beyond that suit with Mobbs, his title to the accretion or right to the possession had never been questioned by any one up to the time that appellant moved on the same. The entire accretions had been under fence since 1901. He had fences constructed in the bend to divide the land in cultivation from his pasture lands, and he continued to control and rent out the

land between the fence and the river and to exercise the same authority over it as he did over the lands in cultivation.

It could serve no useful purpose to set out further the testimony in detail. The testimony of the appellee is corroborated by the testimony of other witnesses to the effect that the land in controversy had been occupied by appellee under color of title for a sufficient length of time to give him title by adverse possession. Nor would it be worth while to set out and discuss in detail the testimony upon which appellant relies to sustain his contention that the land in controversy was within the original boundaries of the land owned by his father, and that, after having been washed away, they were gradually rebuilt and formed within the boundaries originally described in the deed to his father, Jesse Gray, that is to say in section 7, township 5 north, range 15 west. Suffice it to say, after considering the testimony of the appellant himself and the testimony of the witnesses adduced by him including the testimony of the surveyor and the plat exhibited with his deposition together with the testimony of the appellee and the witnesses adduced by him, the testimony of the surveyor and the plat also exhibited with his testimony, we have been unable to reach a satisfactory conclusion as to whether or not the lands in controversy are accretions within the boundaries of the original tract of land conveyed to the appellant's father. There was considerable testimony tending to show that no island was formed within the boundaries of the land originally owned by appellant's father. If the island was formed as claimed by the appellant, the testimony is such as to leave our minds in grave doubt as to whether it was within the boundaries of the land originally owned by the appellant's father.

We are unable to determine from the testimony in the whole record where the preponderance of the evidence lies on this issue. Therefore, we treat the finding of the chancellor as persuasive and adopt it as our own. *Leach* v. *Smith,* 130 Ark. 465.

The chancellor found that no part of the land in controversy was formed as an island, but that the same was an accretion to original tracts of land owned by the appellee in sections 13 and 18. See *Bush* v. *Alexander,* 134 Ark. 307. Under this finding of fact by the chancellor, the act of April 26, 1901, section 4918 of Kirby's Digest, upon which appellant relies to give him title by accretion, has no application.

The decree is correct, and it is, therefore, affirmed.